[No. 2705. May 1, 1923. Rehearing Denied Aug. 29, 1923.]

## STATE v. ARCHULETA et al.

### SYLLABUS BY THE COURT

1. In a prosecution for perjury, a reporter who took the evidence in the former trial, where the perjury was committed, may be allowed to read such portions of the evidence as may be necessary to support the assignments of perjury. The defendant may not require the state to put in all of the evidence given on the former trial, nor may he, on cross-examination of the reporter, require him to read all of the testimony, if objected to as not proper cross-examination. He may, of course, introduce the remainder of the testimony as a part of his case.

2. In a prosecution for perjury, a variance between the allegation and the proof, in that the allegation is that the perjury was committed in the former prosecution against the defendants, while the proof shows that the former prosecution was against the defendants and one other person is an immaterial variance, and may be disregarded.

3. A communication between an attorney and two or more clients, who have a common interest, is privileged as to all of the clients, in subsequent litigations between third persons and any one of the clients.

4. The cross-examination of the witnesses is properly limited to the scope of his direct examination.

5. It is not necessary that warning be given an accused under arrest that his extrajudicial confession may be used against him, in order to render the same admissible.

6. The general rule is that an acquittal of the defendant on a criminal prosecution is not a bar to a subsequent prosecution for perjury, committed in his testimony in the former prosecution.

Appeal from District Court, Mora County; Leahy, Judge.

Avelino Archuleta and others were convicted of perjury, and they appeal. Affirmed.

E. P. Davies and C. J. Roberts, both of Santa Fe, for appellants.

M. J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

PARKER, C. J. The appellants had been tried for

murder and were acquitted. They were sworn and testified in their own behalf, and all told practically the same story. After the acquittal they were separately indicted for perjury in the murder case, and were convicted and sentenced, and have appealed from the judgment.

[1] 1. Upon the trial in this case the court reporter, who took the testimony in the murder case. was put upon the stand and testified as to the evidence given by the defendants on that trial. He read from a transcript of his stenographic notes, by consent of all parties, portions of the testimony given by each of the defendants in support of the assignments of perjury charged in the indictments in this case. Upon cross-examination of the court reporter, counsel for appellants sought to compel the state to put in all of the testimony of the appellants given on the murder trial. or, in the alternative, to allow the appellants to put in such evidence by way of cross-examination of the witness for the state. The application to compel the state to put in all of the testimony of the appellants was denied by the court, and the counsel for the state objected to such statements being shown on cross-examination. for the reason that the state had introduced only that portion of the testimony relevant to the assignments of perjury in the indictments, and that the evidence proposed to be introduced would not be proper cross-examination. This objection was sustained by the court. When the appellants came to put in their case in defense, however, they failed to renew their offer to put in all of the testimony of the appellants in the murder case.

It is to be seen, therefore, that the question involved is a very narrow one, and is not one of the admissibility of the evidence in question, but is a question of the proper order of proof. The appellants were not denied the right to put in the proof when they came to make out their defense; they were simply denied the right to put in the proof as a part of the cross-examination of the official reporter. The rule in this jurisdiction is in accordance with the general trend of American author-

ity, which is to the effect that the proper cross-examination of the witness shall be limited to the subject matter and scope of his direct examination. State v. Rodriguez, 23 N. M. 156, 167 Pac. 426, L. R. A. 1918A, 1016. See, also, 28 R. C. L. ''Witnesses,'' § 194. When an examnier goes beyond the scope of the direct examination, he makes the witness his own. Whether the court will allow the examiner to thus make the witness his own during the progress of the development of the proof by the opposite party is a procedural question, resting, ordinarily, in the discretion of the trial judge who has under all ordinary circumstances complete control over the order of proof. The rule to the effect that, when a part of a conversation, letter, or document is introduced by one party, the opposite party is entitled to have the whole conversation, letter, or document introduced, has, under the circumstances of this case, no application. In cases where such a question arises, the witness ordinarily undertakes to relate the whole conversation, or to produce a letter or a document. In such instances the witness is vouching for the whole matter as a single fact, and in such cases cross-examination would be proper under ordinary circumstances. In this instance, however, the witness did not purport to be giving all of the testimony of the appellants, but only such portions thereof as were necessary to furnish the foundation for the assignments of perjury. He merely read from a written transcript portions of the testimony. If other portions of the testimony explained or did away with the testimony which was related by the court reporter, the document was before the court for the use of defendants, and it was a matter to be brought forward when the case for the defendants was being put in. It follows that there is nothing in the contention of appellants upon this point. See 3 Wigmore, Ev. § 2103.

[2] 2. Counsel for appellants argue that there is a variance between the allegations of the indictment and the proof. It appears from the indictment in the murder case that the appellants and one additional

defendant were charged with the murder, while in the indictment in this case the cause is described as being an indictment against the four appellants, not naming the fifth defendant. This is plainly a variance, but in our view of the matter it is an immaterial variance. The object of the indictment is to advise the defendant of the nature and character of the charge against him, and to provide him immunity from a second prosecution arising out of the same state of facts. If this is accomplished, and the elements of the crime are substantially charged, it is all the defendant is entitled to. Here the allegation is that the appellants were charged with the murder of one Trujillo. This is literally true, and furnished the appellants with the information which they required to prepare and present their full defense. The fact that the fifth party was also charged with appellants is immaterial, and in no way affects the rights or impairs the ability of the appellants to make their defense. The judgment in this case is likewise a bar to any further prosecution, because the identity of the proceeding can be shown by parol, if necessary. We recently examined this question in State v. Lucero, 20 N. M. 55, 146 Pac. 407, and again in State v. Herrera, 28 N. M. 155, 207 Pac. 1085. While these cases are not exactly like this one upon the facts, the principles announced, especially in the former case, are controlling here.

[3]    A witness, Martinez, who had been jointly indicted with the appellants for the murder, and who had pleaded guilty, and who had thereafter testified for the state in the murder trial, testified in the present case to the alleged facts surrounding the killing, contradicting the evidence of the appellants in the murder trial, thereby laying the foundation for the assignments of perjury in this case. On cross-examination by counsel for appellants he was asked the following question:

"Q. I will ask you to state if it is not a fact that down there at the jail, the night that Mr. J. Leahy and Mr. Blas Sanchez were there, when these boys in your presence told

you that they were going to tell the truth, that you fell into a rage, and tried to attack one of these defendants. Is not that true? A. No, sir."

The appellants sought to impeach this witness by the following question propounded to Mr. J. Leahy:

"Q. I will ask you to state whether at that time, the defendants in this case made the statement, or some of them, that they were going to tell the truth about this case. and whether or not the witness, Leandro Martinez, thereupon flew into a rage and sought to attack one of these defendants?"

Objection was interposed by counsel for the state to the effect that the question called for impeaching evidence upon an immaterial matter, and upon the ground that the incident occurred, if it did occur, while the witness and appellants were preparing for the defense in the murder case, and that the evidence, therefore, was within the privilege of confidential communications between attorney and client. The evidence was proposed by the appellants for the purpose of showing bias and feeling of the witness towards the appellants. Bias and prejudice of a witness towards one or more of the parties to a lawsuit are never collateral or immaterial issues. Bias and prejudice always reflect upon the credibility of a witness, and are susceptible of proof by a great variety of circumstances. In this case the evidence, if it had been allowed to be produced, would have shown that the witness was quite probably actuated by resentment and prejudice against the appellants. It appears from the transcript that the appellants and the witness had theretofore framed a defense along certain lines, and when the witness learned that the appellants proposed to tell a different story in the murder trial, he became enraged and attempted bodily violence upon one of them.

The further objection, however, to the proposed testimony, as before seen, was founded upon the supposed privileged character of the information, about which it was proposed to have the attorney testify. A further offer by counsel for appellants was made to show. on

cross-examination of the witness Martinez, that he had been willing to agree to any plan, or any story, so that he would be protected, and that he tried to get the appellants to agree to such plan, and that Mr. Ward, his attorney, told the witness he would not represent him, if he insisted upon testifying to something that was not true. Thereupon counsel for the state examined the witness, and asked him whether he was willing that his attorney might testify as to what occurred between him and his counsel, to which the witness answered in the negative. The witness did answer, however, that after talking with his lawyers, Messrs. Leahy and Ward, he abandoned his scheme to testify as all of the defendants in the murder case had agreed to do. Thereafter counsel for appellants offered to prove by the attorney, Ward, and the interpreter, Sanchez, by way of impeachment, that he would agree to any plan or proposition which would shield and protect the witness from the murder charge.

Counsel for the state objected to the offer on the ground that Mr. Leahy and Mr. Ward were at the time counsel for the witness and the appellants, all defendants in the murder case, and that Sanchez was acting as interpreter, and that the matters were privileged. It appears that the matters sought to be elicited from the witness on cross-examination, and from his attorneys in impeachment of the witness, were matters which occurred in the presence of the witness and the appellants, all defendants in the murder case. The question, therefore, arises as to whether, under such circumstances, communications between attorney and client are privileged. Counsel for appellants admit the general rule that private communications between attorney and client are privileged, and that the attorney cannot, without his client's consent, divulge matters which were communicated to him in confidence by his client in the course of his employment. They argue, however, for an exception to this general rule to the effect that, where an attorney is employed by two or more persons to give professional service and assistance in a matter in which they are mutually interested,

said attorney can, on controversy subsequently arising between the said persons, be examined as a witness at the instance of either as to communications made when he was acting as attorney for all.

We think counsel for appellants have misconstrued the scope and effect of the exception to the general rule above stated or have attempted to apply the exception to a state of facts not authorizing its application. In this case it is to be remembered that the parties are the state on one side and the appellants on the other in a prosecution for perjury. The witness under cross-examination, as before pointed out, is in no sense a party to the proceeding, and is in no legal sense in controversy or litigation with the appellants. Of course, in a broad sense, a controversy had arisen between the witness and the appellants as to the truth in regard to the murder, with which all were jointly charged. But the controversy or litigation was between a third party and the appellants, and under such circumstances it would seem that the proposed testimony of the witness would not fall within the exception to the general rule. Upon the subject, see Kirchner v. Smith, 61 W. Va. 434, 58 S. E. 614, 11 Ann. Cas. 870, and note, 878. Whether the proposed facts lacked privilege on account of being a proposal to commit a fraud or crime is not urged in the briefs, and we assume counsel does not rely upon this consideration. It follows that there was no error in excluding the evidence.

[4] 4. It appears from the transcript that all of the defendants in the murder case had made written confessions to participation in the murder, which were introduced against the appellants in the present case. Upon cross-examination of the witness Martinez, counsel for appellants sought to show that the witness was present when these confessions were made, and that they were made by reason of threats by the witness against the appellants. The testimony was objected to as not proper cross-examination, and the objection was sustained. There was no error in this ruling. If the appellants in this case desired to show that they made

confessions under duress and fear of the witness Martinez, it was a part of their case, and was not a proper subject of cross-examination; the subject not having been gone into by the prosecution.

[5] 5. Error is assigned by the appellants upon the production of some verbal admissions or confessions. The sheriff was put upon the stand, and asked if he talked to the defendants about the murder, and he said that he first talked with them separately, and then altogether. He then testified as follows:

"Q. What, if anything, did Manuel Gonzales tell you at that time, concerning this killing?"

Objection was interposed as follows:

"Objected to for the reason that any statement that Manuel Gonzales might have made at the time, while under arrest, without having been warned of its effect, is incompetent and irrelevant in this case."

The objection was overruled, and then the witness went on to detail the admission which Gonzales had made to him. It is to be observed that the objection made by counsel was not as to the voluntary character of the admission, but is based upon the naked proposition that, because the defendant was under arrest and was not warned of the effect his admission or confession might have, it was therefore incompetent. No attempt was made by counsel for appellants at the time to fully develop the circumstances surrounding the making of the admissions, nor did he later, on cross-examination of the sheriff, attempt to develop any facts to show that the admissions were not voluntary. It further appears that the admissions were merely to the effect that appellants had participated in the murder, but they descended into very little detail. All of the appellants afterwards made written confessions, giving a detailed account of the killing, as did also the witness Martinez.

It is apparent that the objection made by counsel for appellants to the introduction of the admissions was

properly overruled. It is not necessary that warning be given the accused, when under arrest, that his extrajudicial confession may be used against him, in order to render the same admissible. State v. Anderson. 24 N. M. 360, 366, 174 Pac. 215; 1 R. C. L. "Admissions and Declarations," § 113; 16 C. J. ".Criminal Law." § 1482; Ammons v. State, 80 Miss. 592, 32 South. 9, 18 L. R. A. (N. S.) 768, and note at page 791, 92 Am. St. Rep. 607, where the cases throughout the country are collected and analyzed. The rule in Texas seems to be different, by statute.

[6] 6. The main contention in this case is that. the appellants having been acquitted of the crime of murder, and no new or additional evidence having been introduced in this case, such acquittal was a bar to subsequent prosecution of the appellants for perjury committed in the murder trial. The argument of counsel for appellants, as we understand it, is founded upon the proposition that, if a defendant who has been acquitted in a criminal case can be prosecuted for perjury committed in that case, then he may in turn be prosecuted for perjury committed in the perjury case, and if he again should be acquitted he might again be prosecuted for perjury, and so on ad infinitum. The argument is palpably fallacious. If the defendant should be acquitted of perjury, committed in the former trial for murder, wherein he had been likewise acquitted, the judgment of acquittal would be a bar against any further prosecution for such perjury. In the perjury trial, the question for the first time is squarely before the jury as to the truth of the defendant's testimony. If the jury finds that it is truthful, no further prosecution could be had. On the other hand, in the trial for murder, the question is, not whether the defendant's testimony is truthful, but whether he committed the murder. A verdict of acquittal in the perjury case is an adjudication of the truth of the witness' testimony, and he cannot again be prosecuted.

Upon authority there seems to be considerable disparity of opinion. The general rule on the subject,

however, is that the acquittal of a defendant on a criminal prosecution in which he testifies does not bar a subsequent prosecution against him for perjury in his testimony.   21 R. C. L. "Perjury," § 15; Teague v. Com., 172 Ky. 665, 189 S. W. 908, L. R. A. 1917B. 738 and note; Mitchell v, State, 140 Ala. 118, 37 South. 76, 103 Am. St. Rep. 17, and note at page 29; Allen v. United States, 194 Fed. 664, 114 C. C. A. 357, 39 L. R. A. (N. S.) 385, and note.   The key to the solution of the question would seem to be the proposition that a finding on an issue, in either a civil or a criminal case. is an adjudication upon that issue, which cannot be afterwards relitigated.   When, however, the issue in a criminal case is a different issue from that in a subsequent perjury case, the acquittal in the criminal case is no bar to the prosecution for perjury.   This being so, the prosecution in the case at bar may undoubtedly be maintained.

7.   A further proposition is put forward to the effect that the verdict is not supported by substantial evidence.   This is so palpably erroneous that a discussion of the same need not be had.

It follows, from all of the foregoing, that there is no error in the judgment available to the appellants. and it should be affirmed; and it is so ordered.

BRATTON and BOTTS, JJ., concur.