301 P.2d 329

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Gilbert CAMPOS and Bob Moon, Defendants-Appellants.**

No. 6085.

Supreme Court of New Mexico.

Sept. 5, 1956.

Hartley & Buzzard, Clovis, for appellants.

Richard H. Robinson, Atty. Gen., Paul L. Billhymer, Fred M. Standley, Asst. Attys. Gen., for appellee.

SADLER, Justice.

The defendants have jointly appealed from a judgment of the district court of Curry County sentencing them to the penitentiary for the crime of breaking and entering in the nighttime with intent to commit the crime of larceny and with grand larceny.

They have presented two claims of error which counsel for defendants argue under two points, the first of which reads:

"That the Court erred in admitting the State's Exhibits Nos. 2, 4, 5, 6, 7, 8, 9 and 10 over the appellants' objection, because said exhibits were not properly identified nor connected up with the appellants."

Exhibit No. 2 was a pair of trousers; Exhibit No. 4, a man's gray coat; Exhibit No. 5, a man's white coat; Exhibit No. 6, a pair of white trousers. Exhibits Nos. 7 and 10 were samples of white paint, and Exhibits Nos. 8 and 9 were samples of grease.

The principal argument of counsel for defendants under this point, particularly as to Exhibits Nos. 2, 4, 5 and 6, rests on a claim that the exhibits mentioned were not sufficiently connected with the defendants, or shown to have been worn by them at the time of the crime and that this shortage of proof by the State as to the exhibits mentioned took away its right to introduce Exhibits Nos. 7, 8, 9 and 10. Thus it is that error was committed by the court, say counsel for defendants, by the reception in evidence of all such exhibits.

The attorney general takes an entirely different view of the evidence. We are reminded by him that the evidence of the State placed both defendants in Clovis on the evening the crime was committed. Exhibit No. 2, being a pair of trousers, was taken from the defendant Moon by Sergeant Miles of New Mexico State Police. Moon was arrested during the day following the crime and the trousers identified as Exhibit No. 2 were taken from him as a part of his wearing apparel at the time of his arrest. Certainly, there is no failure to identify this exhibit as clothing belonging to him.

Exhibit No. 4, a man's gray coat, was secured by a police officer from the defendant Moon's home. The possession of chattels raises a presumption of ownership of such chattels. 9 Wigmore on Evidence (3rd Ed.) 425, § 2515. As to Exhibits Nos. 5 and 6, being a white coat and a pair of white trousers, there was evidence they belonged to defendant Campos and that he was wearing them on the night or evening of the crime charged. Other testimony connected Campos with these two articles of wearing apparel.

Coming now to Exhibits 7 through 10, inclusive, as to which there is no serious contention by defendants' counsel, there was a lack of proper identification. The defendants do contend however that the exhibits just mentioned lack relevancy and materiality. Exhibit No. 7 was made up of paint samples scraped by the sheriff's office from the safe alleged to have been stolen. Exhibits 8 and 9 were samples of grease taken from a floor jack, whereas Exhibit No. 10 was a sample of paint scraped from the same floor jack.

Counsel for defendants base their claim of error with reference to the introduction of these exhibits, in large measure, upon the contention that before they can have probative value on the question of identification of defendants and thereby connect them with the breaking and entering charge, the evidence should establish that the articles of clothing designated as State's Exhibits Nos. 2, 4, 5 and 6 were worn by the defendants when the crime was committed. They agree, however, if that fact were once established, "then Exhibits Nos. 7 through 10 would have been relevant and material." On this concession by counsel alone, we very well might cease discussion of this claim of error, since the evidence amply supports an inference the exhibits in question represent clothing worn by defendants at the time and scene of the crime.

In Underhill's Criminal Evidence, p. 157, § 117, it is stated "the proper method is to prove first that the clothing offered belonged to the accused and that it was worn by him at the time of the tragedy." See, also, 2 Wigmore on Evidence (3rd Ed.), pp. 385–387, §§ 411–412; 2 Wharton's Criminal Evidence (11th Ed.) 192; Commonwealth v. Parrotta, 316 Mass. 307, 55 N.E.2d 456, 459. In the text cited, Mr. Wharton states:

"If a question of fact as to the connection of the article sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence rather than its admissibility."

The doctrine announced in the foregoing text is applied by the Supreme Court of Massachusetts in Commonwealth v. Parrotta, supra, as follows:

"The lack of positive identification affects not the competency but the weight of the evidence, and the issue of identity was for the consideration of the jury."

A consideration of the claim of error argued by counsel for defendants under their point one must be denied. We find no abuse of discretion in the trial court's

admitting these exhibits for such weight and consideration as the jury might give them.

■ Finally, it is claimed as a basis for reversal that the trial court erred in denying the motion for a mistrial interposed by defendants during progress of the trial. This claim of error finds expression in the second point presented in their brief-in-chief. It reads:

"That the appellants were denied a fair trial because of the Court's overruling their motion for a mistrial based on a prejudicial account in a newspaper of general circulation and the jury having access to said newspaper during an overnight recess."

The newspaper article appeared in the evening issue of Clovis News-Journal circulated on the afternoon of the overnight recess.

It is as follows:

"Surprise Witness Is Called In Trial Here. E. L. Cavallero, manager of the former Laborer's Club at Grand and Hull Streets, was a surprise witness for the State Tuesday morning during early testimony in the Ninth District Court trial of Gilbert Campos, 35, and Bob Moon, 25, both of Santa Rosa.

"Campos and Moon are charged with two counts, grand larceny and breaking and entering, in connection with the burglary of Williams and Son Motor Company, 800 Main, during the early hours of April 30.

"Cavallero testified from the witness stand that Campos had been in the Laborer's Club from about 11 PM, April 29, to between 3 and 4 AM, April 30, but that Moon wasn't with him.

"His testimony surprised District Attorney Richard F. Rowley who said Cavallero had told Sheriff Dan Webster, State Patrolman Charles Hawkins and a former state policeman, Pat Stovall, the night of April 30 that Campos and Moon had visited the club together the night before.

"District Judge E. T. Hensley, Jr. who is presiding over the case, overruled the objections of Dan Buzzard, defense attorney, in permitting Cavallero to be questioned concerning his previous statement.

"On being cross-examined by District Attorney Rowley, Cavallero remembered talking to the officers but 'didn't recollect' saying Campos and Moon had arrived at the Club together about 11 PM, Friday, April 29, and left together about an hour before he had closed at 3 AM.

" 'I don't recall' was Cavallero's answer when being cross-examined by

Rowley on whether Moon had been in the Laborer's Club that particular night.

"First person called to the witness stand today was Ada Gant, bookkeeper for Williams and Son. She was followed by Bob Williams, shop foreman, and Roy Williams, owner, who testified as to what was missing from the company and the condition of the shop.

"Stolen in the burglary was a new Oldsmobile and a large safe weighing around 2,500 pounds which contained around $6,000 although only about $300 was in cash.

"The Oldsmobile, broken down by the weight of the heavy safe, was recovered abandoned about 15 miles north of Fort Sumner on April 30.

"A Fort Sumner policeman and former auto mechanic, M. C. Gunter, was also called to the stand. He testified that he noticed the broken down Oldsmobile and a 1949 or '50 model green Buick with a busted radiator on the highway north of Fort Sumner around 7:30 AM, April 30, as he was enroute to Las Vegas.

"Moon flagged him down, he said, and he gave him a ride into Santa Rosa.

"Gunter testified that a man was sitting in the Buick but he couldn't identify him because when he looked at the Buick the man turned his head.

"Crawford Goodman, Jr., testified that he and Bobby Skeen noticed the two cars on the shoulder of the road as they were enroute from Alamogordo Dam to Santa Fe.

"Johnny Paschal of the Clovis Air Force Base testified that he was working at the service station at 7th and Rencher the night of April 29 and the two men drove in the station in a green Buick to have the battery checked.

"He pointed at Campos and Moon and identified them as the two men. He stated that Campos made a telephone call from the station while Moon paced nervously about.

"Also called to the witness stand before the case was recessed for the noon hour today was Art Hall, filling station operator at Taiban.

"Hall testified that Moon, driving a green Buick, appeared at his gas station between 5:30 and 6:00 AM Saturday, April 30. Moon got two gallons of gas in a can for another car which he said had run out of gas, Hall said.

"The green Buick has been identified by officers as the property of Campos. It was towed to a repair shop in

Santa Rosa for repairs to the radiator and fan.

"When the new Oldsmobile was stolen from Williams and Son the burglars siphoned gasoline from the other cars in the shop for its gas tank, officers disclosed at time of the burglary.

"Campos has a long criminal record dating back to 1945. He has been charged with burglary, grand larceny, assault, robbery, car theft, and both jewel and post office burglary.

"He was acquitted about a year and a half ago of having robbed a rancher near Santa Rosa of around $32,000. He has no occupation.

"Moon was released from the Oklahoma penitentiary about three years ago and had been working in a Santa Rosa cleaning establishment up until his arrest."

There was no effort on the part of defendants' counsel to show that any member of the jury had read the article appearing in the Clovis News-Journal. Indeed, none had, if the jury observed the admonitions of the court made previously and on the eve of the overnight recess. Furthermore, after denying the motion for mistrial and upon the reconvening of court the following morning, the court instructed the jury touching this matter, as follows:

"The Court: Do both sides close?

"Mr. Buzzard: Closed, Your Honor.

"Mr. Rowley: State closes.

"The Court: Ladies and gentlemen, you have heard all the testimony that is to be submitted in this case. There yet remains the preparation of the instructions on the law as applied to the testimony as submitted. That will take a little time, the recess will be no longer than is necessary. I will ask you to be back in your jury box after we recess in approximately forty-five minutes. During this recess bear in mind that it is increasingly important that you not discuss the case nor permit anyone to discuss it in your presence, and that you continue to refrain from forming an opinion as to the merits of the case until it is finally submitted to you. At the close of the session yesterday, and on prior overnight recesses through this term, the court has admonished this Jury, as all jurys to be very cautious and avoid if possible the listening to any news accounts of whatever transpired during the trial of a case and not to read over any printed matter in newspapers about the trial of the case. The Court is compelled at this time, in the interests of justice, to instruct this jury particularly that if they happened to read yesterday's issue of the Clovis

News Journal to completely ignore it, ignore the matters therein stated with reference to this case, since they could be highly prejudicial to the defendant, wholly unwarranted and not based upon any testimony that has been received in this case. Someone saw fit to publish in the newspaper yesterday, just referring to an article, counsel, prior behavior of the defendants on trial. You are instructed that there has been no testimony introduced whatever in this case as to that, that the information is wholly misleading, that there is no testimony of either of these defendants having ever been convicted of any offense of any nature, and anything appearing in that article you are specifically instructed to disregard. It is unfortunate that courts cannot receive, and the public receive the information factually, as it is entitled to. Too frequently the public is given an entirely erroneous impression about matters that transpire in Courts. This is an excellent illustration. Anything further, Counsel?

"Mr. Buzzard: Nothing further?

"Mr. Rowley: No, sir.

"The Court: Court will be in recess about 45 minutes. Mr. Reporter, will you mark this article and put it in the record?"

In order to predicate error on the action of the trial court in denying the motion for mistrial, we should have to assume a violation by the jurors, or some of them, of the trial court's admonition given on the eve of the recessing of the court for the night, and that prejudice resulted therefrom. A matter of this kind rests largely within the broad discretion of the trial court. In the text of 23 C.J.S., Criminal Law, § 961, p. 281, the author states:

"The declaring of a mistrial, on his own motion or on motion of a party, rests in the trial court's discretion; but it has been held that this power is to be exercised only in very extraordinary and striking circumstances, and where accused's rights are not prejudiced; and he may properly refuse so to do where he is satisfied that no injustice has resulted, or will result, from the acts or occurrences complained of."

See, also, State v. Bentley Bootery, Inc., 128 N.J.L. 555, 27 A.2d 620; Commonwealth v. Barker, 311 Mass. 82, 40 N.E.2d 265; United States v. Weber, 2 Cir., 197 F.2d 237; United States v. Pinna, 7 Cir., 229 F.2d 216; State v. Fouts, 79 Ohio App. 255, 72 N.E.2d 286.

We have carefully considered the errors charged and find no merit in any of them. The defendants received a fair trial and the judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.