337 P.2d 406

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Joe M. ROYBAL and Fidel Roybal,
Defendants-Appellants.**

No. 6486.

Supreme Court of New Mexico.

March 26, 1959.

Roberto L. Armijo, Las Vegas, for appellants.

Fred M. Standley, Atty. Gen., Robert F. Pyatt and Joel B. Burr, Jr., Asst. Attys. Gen., for appellee.

LUJAN, Chief Justice.

The defendants as appellants before this court complain of the sentences imposed upon them by the district court of San Miguel County, following their conviction, by a jury, of the crimes of operating a game of chance for money and permitting a game of chance to be operated on premises owned and in their possession and control.

The circumstances giving rise to the prosecution were these:

Pen Winston, District Captain of the New Mexico State Police, testified, substantially, as follows: That he had supervision over San Miguel, Harding, Union, Colfax and Mora counties; that he had received certain information during the month of December, 1957, and prior thereto, concerning certain gambling activities in the city and town of Las Vegas; that as a result of that information he talked with state, county, city and town police officers with reference to reports that they had had and as to whom those complaints were directed against; that when they told him the complaints were against the Skyline and Joe's Ringside Inn, he got in touch with the Chief of State Police, Joe Roach, and requested two plain clothes men to make the necessary investigation; that State Police Officers Payne and Miller were assigned to investigate the situation; that on December 28, 1957, these officers reported to him at Springer, New Mexico; that he made arrangements as to the work designated to each officer; that he instructed said officers to go to Joe's Ringside Inn, and if they were gambling to get into the game; and if they were asked to get into a game to do so; that if they were unable to get into a game or were not invited into one that they should report back to him by midnight; that if they did not report back by that

time that he and other uniformed officers would come in and make the arrest; and that is what he did.

State Police Officer Arnold W. Payne testified substantially as follows: That he was one of the officers assigned to investigate gambling activities at Joe's Ringside Inn; that on the night of December 28, 1957, he, in company with Officer Robert Miller, visited the above establishment, and that after having ordered some beer, which was served to them, the appellants came over to where they were sitting and visited for awhile; that during the conversation being had the appellant Joe M. Roybal told them to "take their beers to the back room and there they could try their luck;" that they did so and proceeded to shoot craps; that as a result of the dice game he lost $30.

Officer Miller testified, substantially, as follows: That he was also assigned to investigate gambling activities at Joe's Ringside Inn; that on the night of December 28, 1957, he visited the above establishment with Officer Payne; that while there he was asked by the appellant Fidel Roybal to shoot dice; that he accepted the invitation and proceeded to the back room where he engaged in shooting craps with the appellants; that as a result of said game he lost approximately $30.

The appellants submitted an instruction on *entrapment* which the trial judge refused to give, nor did he give the rule of law with reference to entrapment, which appellants contend was error requiring the granting of a new trial.

There was no error in the refusal, for the requested instruction, as submitted, required an acquittal of appellants if they were induced by Officer Payne to participate in a dice game for money, regardless of the fact whether appellants had been before engaged in the unlawful operation of a gambling game, to-wit, craps. There being no evidence of entrapment, there was no necessity for the requested instruction. See State v. White, 33 Idaho 697, 197 P. 824.

If appellants did not operate a gambling establishment, as was charged in the information, manifestly, when Officer Payne grabbed appellant, Joe M. Roybal's hand, as testified to by him, and told him that he would like to shoot dice, his reply would have been that they did not run dice games in their premises. Appellants were merely given an opportunity to either violate the law or refuse to do so, which does not constitute entrapment. See State v. Johnson, 42 Idaho 381, 246 P. 531; Simmons v. People, 70 Colo. 262, 199 P. 416; Ex parte Moore, 70 Cal.App. 483, 233 P. 805; 22 C.J.S. Criminal Law § 45, p. 99. But appellants were *evidently and beyond question* already engaged in violating the law by possessing the necessary gambling paraphernalia before the police officers entered their establishment on December 28, 1957,

and made the arrest. On this phase of the case Joe M. Roybal, one of the appellants, testified as follows:

"* * * Q. May I ask you Mr. Roybal, is State's Exhibit No. 1, consisting of the wooden box and silver dollars and currency, is that yours? A. Yes, sir.

"Q. And is State's Exhibit No. *2,* being the dice table, is that your property? A. Yes, sir.

\* \* \* \* \* \*

"Q. Mr. Roybal, how much money was in State's Exhibit No. 1 when the game started? A. I had $250.00."

As to what occurred at Joe's Ringside Inn after Officers Payne and Miller entered the building Joe M. Roybal told a different story from that given by the above named officers. He testified as follows:

"Q. * * * Now, Mr. Roybal, when you first saw these two individuals (police officers), where were you? A. I was inside Joe's Ringside, tending bar. They came in. They sat at the two stools on the southeast corner of the bar. I greeted them. I served them two beers; and before I served the two beers, Mr. Payne grabbed my hand and asked me that he wanted to shoot dice. I told him *that we did not have a game going on at the time.*

\* \* \* \* \* \*

"Q. And what did you then do following that? A. Well, I turned around to wait on some more people. I came back and served them their second beer. That was a little while later. When I served them the second beer, Payne insisted that he wanted to shoot dice again. I again told him *that we did not have a game going.*

\* \* \* \* \* \*

"Q. Proceed. A. So he says, 'Come on, you chicken, lets shoot dice.' I walked a little ways, and I came back and says, *'Lets shoot.* \* \* \*'"

The appellants were suspected persons and could be tested by being offered an opportunity to transgress the law. See Hoy v. State, 53 Ariz. 440, 90 P.2d 623. But may not be put under any extraordinary temptation or inducement. See United States v. Wray, D.C., 8 F.2d 429. Even if the statement of appellant, Joe M. Roybal, that Officer Payne had insisted on gambling by asking him on three different occasions to shoot dice, be considered an inducement to gamble, this would be but a repetition of the first plea ever interposed in Paradise: " 'The serpent beguiled me and I did eat.' That defense was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity

to the culprit, and it is safe to say that under any code of civilized, not to say christian ethics, it never will.'" Board of Commissioners of Excise v. Backus, 29 How.Prac., N.Y., 33, 42.

█ We recognize the rule that it is not permissible for an officer to initiate the criminal act, nor to use undue persuasion or enticement to induce the defendant to commit a crime, when without such conduct upon the part of the officer the defendant would not have committed such crime.

█ However, it is no entrapment to commit a crime where the officer merely offers an opportunity to a criminal who is ready and willing to commit an offense. If an officer of the law has reason to believe that the law is being violated, he may proceed to ascertain whether those who are thought to be doing so are actually committing a criminal offense. If an officer acts in good faith in the honest belief that the defendant is engaged in an unlawful business, of which the offense charged in the information is a part, and the purpose of the officer is not to induce an innocent person to commit a crime but to secure evidence upon which a guilty person can be brought to justice, the defense of entrapment is without merit. See 22 C.J.S., supra. In other words, if, at the time in question and at the time of the inducement to shoot dice, the appellants were already engaged in the business of operating dice games, as is obvious from the testimony of one of the appellants that *"we did not have a game going on at the time"* and were in possession of gambling paraphernalia as is also shown by the testimony of one of the appellants, it is no defense for them that they were merely induced by the persisting officer to shoot dice.

█ The guilt of appellants was clearly established by the evidence produced by the prosecution if believed by the jury, and the verdict shows that it was believed and that the appellants' denials and their testimony as to inducement were not believed. The dice game was in progress and being conducted by the appellants at the time Captain Winston and other uniformed officers entered the room and made the arrest. The only explanation advanced by appellants is that they were entrapped by the officer to engage in the crap game.

Another question is urged by appellants as a ground for reversal. We have considered it and find same without merit.

It follows from what has been said that the judgment should be affirmed.

It is so ordered.

SADLER, McGHEE, COMPTON, and CARMODY, JJ., concur.