448 P.2d 807

STATE of New Mexico, Plaintiff-Appellee,

v.

Ruben SANCHEZ, Defendant-Appellant.

No. 210.

Court of Appeals of New Mexico.

Dec. 6, 1968.

---

Norman D. Bloom, Jr., Fettinger, Bloom & Overstreet, Alamogordo, for appellant.

Boston E. Witt, Atty. Gen., Warren O. F. Harris, Jesse F. Bingaman, Jr., Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant appeals from his conviction on two charges of possession of marijuana, contrary to the provisions of § 54–7–13, N.M.S.A.1953.

Although none of the points relied upon for reversal directly attack the sufficiency of the evidence to support the convictions, some discrepancies in the evidence are stressed in the briefs and were pointed out in the oral arguments. An appellate court reviews the evidence only to determine if the verdict is supported by substantial evidence. In making this determination, the court views the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967); State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967).

The pertinent facts are that in 1961 or 1962, while in the custody of the California Youth Authority at Tracy, California, defendant met a Mr. Daniel Chavez. They became pretty good friends.

On December 23, 1963, defendant was arrested for a narcotics violation. He was convicted and given a sentence of seven years confinement for this violation. At that time he was addicted to the use of heroin, and was, therefore, committed to a hospital for the period of April 1, 1964, to November 30, 1965. On November 30, 1965, he was released from the hospital and placed on parole.

On February 11, 1966, he violated his parole by leaving California for New Mexico. He arrived in Alamogordo on February 12, 1966, where he had lived until some time prior to 1961 or 1962.

On Sunday, February 13, 1966, Daniel Chavez was working as a narcotics informer with Officer Arthur Sedillo, an undercover narcotics agent and criminal investigator for the New Mexico State Police. They were going through Alamogordo on this date, and, as a part of their duties, made inquiries concerning the possible purchase of narcotics.

During the evening of February 13, Officer Sedillo and Chavez were with some persons suspected of being narcotics violators. They purchased some liquor at a private home with money furnished by Officer Sedillo. At about this time defendant joined the group. He and Chavez recognized each other. Chavez introduced Officer Sedillo to defendant as a cousin of Chavez. They all visited and drank some of the whiskey.

During the conversation, defendant told Officer Sedillo and Chavez that had they been there earlier they might have been able to get some marijuana.

In order to protect his identity and the fact that he was then working in an undercover capacity as a student at New Mexico Western University in Silver City, Officer Sedillo, at the time he was ready to leave, told defendant and the others that he was going to El Paso from Alamogordo. Defendant stated he had a sister living in

Juarez, Mexico and would like to ride to El Paso. He also stated he had a connection and a source of supply for narcotics down there.

Ofifcer Sedillo and Chavez told defendant the car they were using was stolen, and Chavez talked of stealing other vehicles and of having "quite a bit of good luck in burglaries."

The three of them drove to El Paso, and then walked across the bridge into Juarez. Chavez registered as a convicted user of narcotics at the International Bridge, but defendant did not.

They stopped at two or three bars in Juarez and had some more drinks. During the evening, Officer Sedillo loaned defendant $20.00 with which to purchase heroin. Defendant was unable to secure the heroin, so he returned the $20.00.

At about 4:00 a. m. on February 14, Officer Sedillo decided to leave Juarez and get back to Silver City. Defendant did not want to leave, and he made some protests about being left with no means of getting back to Alamogordo. Officer Sedillo then gave him $5.00 for bus fare, and the officer and Chavez left. At no time did the officer or Chavez ask defendant to secure narcotics for them.

The next time they saw defendant was on April 6, 1966, at defendant's home in Alamogordo. They called on defendant at his home and the three of them drove to a bar, secured a six-pack of beer, and then drove to the outskirts of town.

Defendant suggested that it was pretty hot, that they go back to his home, so he could get some marijuana, and that they then go to a shady spot near Tularosa. They drove back to defendant's home. Defendant went into the house and returned, carrying a small package wrapped in newspaper. They then proceeded to the shady spot.

Defendant opened the package and exposed some green material which he referred to as marijuana. They proceeded to manicure the material and roll three cigarettes in papers produced by defendant. Officer Sedillo and Chavez pretended to smoke their cigarettes, but defendant said he had smoked some earlier and did not care for any more right then. He later handed his cigarette to either Officer Sedillo or Chavez. The two partially consumed cigarettes and the one complete cigarette were turned over to Officer Sedillo's superiors later that day.

On April 9, 1966, Officer Sedillo and other police officers proceeded to defendant's home with a search warrant and a warrant for defendant's arrest. The arrest and search were made. The search revealed five home-made cigarettes in a pocket of defendant's trousers.

The contents of these five cigarettes, and of the three which were rolled on April 6, were marijuana.

Defendant seeks reversal of his convictions for possession of marijuana on April 6 and 9. He relies upon three points. The first is that the evidence shows entrapment as a matter of law, and the trial court erred in denying his motions for directed verdicts on this ground.

Defendant claims entrapment as a matter of law because of the following conduct on the part of either Officer Sedillo or Chavez, or on the part of both, during February 13 and the early morning hours of February 14: (1) They gave as their reason for being in Alamogordo that they were on their way to El Paso and wanted to buy some marijuana for the trip. (2) Officer Sedillo gave the impression of being engaged in crime and involved in trafficking in narcotics. (3) They led him to believe the vehicle they were driving was stolen. (4) They led him to believe that Chavez was involved in stealing and selling automobiles and committing burglaries. (5) They lied about planning on going to El Paso from Alamogordo. (6) Officer Sedillo drove the vehicle about Alamogordo and on the way to El Paso in a reckless and at times unlawful manner. (7) They furnished him with liquor to drink in Alamogordo and with money with which to buy

the drinks at the bars in Juarez. (8) They accompanied him to Juarez and countenanced his crossing into Mexico without registering as a convicted narcotics user as required by Federal law.

The trial court submitted the question of entrapment to the jury by instructions to which no objections were made or exceptions taken. As above stated, the claim of error is directed solely at the trial court's refusal to hold, as a matter of law, that defendant had been entrapped.

· Undoubtedly, Officer Sedillo and Mr. Chavez sought to, and very probably did, deceive defendant in some particulars. They told some falsehoods, concealed Officer Sedillo's true identity, and endeavored to present the appearance of criminals. The practice of some deceit is always present in the operations of undercover law enforcement officers and agents. The very terms "undercover" and "informer", as used by the police in their lawful activities to apprehend criminals, infer deceit and stealth. The use of undercover operators and informers has proven necessary to combat the activities of criminals, who rely so largely on deceit, stealth, secrecy and violence to protect themselves and their criminal conduct from discovery.

 The practice of some deceit by law enforcement officers is not, in itself, sufficient to constitute entrapment. See State v. Akin, 75 N.M. 308, 404 P.2d 134 (1965); State v. Roybal, 65 N.M. 342, 337 P.2d 406 (1959). See also United States v. Owens, 228 F.Supp. 300 (D.D.C. 1964). A defendant can be said to have been entrapped only when the officers or agents originate the criminal intent or design and use undue persuasion or enticement to induce defendant to commit the crime with which he is charged. He has not been entrapped if the officers or agents merely offer him an opportunity to commit an offense which he is ready and willing to commit. State v. Akin, supra; State v. Roybal, supra. See also Rowlette v. United States, 392 F.2d 437 (10th Cir. 1968); Sandoval v. United States, 285 F.2d 605 (10th Cir. 1960); United States v. Owens, supra.

 We are unable to perceive how anything done by Officer Sedillo and Chavez on February 13 and 14 can be said to have originated the criminal intent or design on the part of the defendant to possess marijuana on April 6 or 9, or how their conduct can be said to constitute undue persuasion or enticement of defendant to commit the crimes of which he was convicted.

In our opinion, the circumstances in this case show clearly that the most Officer Sedillo and Chavez did was to help create in the mind of defendant a feeling of confidence that they were criminals and users of narcotics. Thus, there was no entrapment as a matter of law.

Defendant next contends he was prejudiced by the court in restricting his cross-examination of Officer Sedillo.

The officer was asked if he made it a practice of dismissing charges against persons who agreed to act as informers. His answer was no. He was then asked if charges had ever been dismissed against an individual who agreed to work as an informer. The officer answered that he had never dismissed charges against anybody who had worked with him.

· The defendant then argued that he was entitled to show charges had been dismissed by the District Attorney against at least one person, who subsequently worked as an informer with Officer Sedillo.

The court ruled this improper cross-examination, because it would not impeach the witness, and because it was outside the scope of the direct examination. The court ruled that defendant could offer evidence by any other means to show that Officer Sedillo had not been truthful in stating he had never dismissed charges against anyone who had worked with him.

 We agree that what defendant sought from the officer would not have impeached his prior testimony. We also agree that it was outside the scope of the

direct examination. Generally, the right to cross-examine is limited to the subject-matter of the direct examination. State v. Stewart, 34 N.M. 65, 277 P. 22 (1929); State v. Archuleta, 29 N.M. 25, 217 P. 619 (1923); 3 Wharton, Criminal Evidence, § 868 at 261 (12th ed. 1955) (Anderson). However, the scope or extent of cross-examination rests largely in the sound discretion of the trial court. Callaway v. Mountain States Mutual Casualty Co., 70 N.M. 337, 373 P.2d 827 (1962); State v. Quintana, 69 N.M. 51, 364 P.2d 120 (1961); State v. Martin, 53 N.M. 413, 209 P.2d 525 (1949); Abeyta v. United States, 368 F.2d 544 (10th Cir. 1966).

Defendant also complains that he was not permitted to cross-examine Officer Sedillo about other trips he had made to Juarez in connection with a similar case, and was not permitted to cross-examine him concerning the tactics and methods which he and other New Mexico State Police Officers used in like cases. He claims he was prejudiced because he was thus deprived of his right to impeach the officer and to adduce evidence from which the jury could have inferred that he, the defendant, was entrapped.

█ The testimony of Officer Sedillo clearly shows no entrapment. Thus, the effect of any evidence which might have been elicited from the officer, by permitting defendant to conduct his cross-examination along the lines he sought, would very largely have been that of impeachment. As above stated, the scope or extent of cross-examination for this and other purposes lies largely within the discretion of the trial court. We are unable to say that the trial court abused this discretion.

█ Defendant's final point is that he was erroneously denied a mistrial when two members of the jury admitted to reading a newspaper article concerning the case.

The facts are that after both sides had rested, but before the case was submitted to the jury, the jurors were permitted to separate for a supper recess. Before the trial resumed and in the absence of the jury, one of defendant's attorneys called to the court's attention the presence of the article in that evening's issue of the local newspaper. He requested that the court examine the jury to determine whether any juror had read the article, and a mistrial be declared if it should develop that any juror had read the article in its entirety.

The court then called the jury and resumed the trial. Upon questioning the jury as to whether any of them had read the article, two jurors raised their hands.

One of these jurors was then asked, "* * * can you disregard all of the things stated in this newspaper article and base your verdict solely upon the evidence adduced at the trial today and the instructions to be given to you by the court? The answer was, 'Yes, sir.'"

The other juror was then asked a similar question, and she also answered, "Yes, sir." She also explained that she read only part of the article and then realized what it was about. She stated that she could totally disregard what she did read.

The court then denied the motion and the case continued.

Defendant contends that at least two items in the article "could have had a highly prejudicial effect on the minds of the two jurors." As to the one juror, we do not know that she read about either of these items, or that she read anything which could possibly have prejudiced her. All we know is that she read a part of the article before realizing what it was about.

As to the other juror, he admittedly read the article, and apparently read it all. However, as already mentioned, he said he could disregard all that was stated in the article and base his verdict solely upon the evidence. Nothing in the article was so unusual or so likely to be prejudicial to defendant as to cause us to disbelieve the juror's ability to disregard it.

In the court's instructions, the jury was instructed to apply the law as given in the instructions "to the facts as you find them from the evidence before you." They were

expressly instructed as to what constituted the evidence in the case. And they were instructed: "You are to consider only the evidence in the case," and "You are bound by the oath you have taken as jurors to decide this case according to the evidence as you have heard it and the law as given you by the court in these instructions."

After the verdicts were returned, the jury was polled as to each verdict, and every juror individually announced that this was his verdict.

Although we are of the opinion that the trial court did not err in denying the motion for a mistrial under the facts of this case, we do caution the trial courts to repeat or, at the very least, remind jurors of the court's enjoinders before each recess, and particularly before any recess at which they may be exposed to any newspaper, radio or television reports of the case.

Defendant suggests that we should follow the guide of Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), and this requires defendant to be given a new trial. We agree with the principle announced in that case. But the result in that case is opposite to the one herein reached because the facts in that case were so different and the news comments so far more likely to prejudice the defendant than those in the present case.

The principle announced in the Marshall case was that:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L.Ed. 1021, [1029] [20 Ann.Cas. 1138]. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. * * *"

We find no New Mexico case in which the question now before us has arisen. In State v. Campos, 61 N.M. 392, 301 P.2d 329 (1956), a motion for mistrial on the basis of the availability to the jury, during an overnight recess, of a prejudicial newspaper article was denied. However, in that case there was no showing that any juror had read the article. In commenting generally on matters of this kind, and particularly on the matter of granting or denying a motion for mistrial, our Supreme Court, in the Campos case, had the following to say:

"* * * A matter of this kind rests largely within the broad discretion of the trial court. In the text of 23 C.J.S., Criminal Law, § 961, p. 281, the author states:

'The declaring of a mistrial, on his own motion or on motion of a party, rests in the trial court's discretion; * * * and he may properly refuse so to do where he is satisfied that no injustice has resulted, or will result, from the acts or occurrences complained of.' "

Although there may have been created an opportunity for prejudice by the reading of the article by one juror and a reading of a portion thereof by another, this is not a sufficient basis for a holding by us that the trial court erred in finding that no prejudice did result. Compare State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct. App.1967). As stated by Mr. Justice Holmes in Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910):

"* * * If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day. * * *"

The truth of this statement by Mr. Justice Holmes finds much greater applicability to conditions in 1968 than in 1910.

We are unable to say that the trial court abused its discretion in denying the motion for mistrial.

In addition to the foregoing cases see Reining v. United States, 167 F.2d 362 (5th

Cir. 1948); People v. Lessard, 58 Cal.2d 447, 25 Cal.Rptr. 78, 375 P.2d 46 (1962).

The judgments and sentences should be affirmed.

It is so ordered.

WOOD and ARMIJO, JJ., concur.