458 P.2d 831

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Ricky Lance THAYER, Defendant-Appellant.**

**No. 314.**

Court of Appeals of New Mexico.

Sept. 5, 1969.

Stanley F. Frost, Tucumcari, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, James V. Noble, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

OMAN, Judge.

Defendant appeals from his conviction of second degree murder. In his first point relied upon for reversal, he asserts error on the part of the trial court in denying his motion for a new trial, and in denying his request, made at the hearing on his motion, for permission "to attempt to acquire affidavits" from the jurors as to whether any of them, during the trial, had in their possession newspapers containing an article concerning the trial, and, if so, whether they read such article.

The verdict was returned, received and filed on September 20. The motion for a new trial was filed on October 3, and the hearing thereon was held on October 18.

In his motion he asserted as one of his grounds for a new trial:

"That on the afternoon and evening of September 18, 1968, several members of the jury empaneled in this case had in their possession and read certain newspaper accounts of the trial and that the defendant was prejudiced by said reading."

█ At the hearing on the motion he called the two bailiffs as witnesses. The first testified that one morning during the trial he procured a newspaper from the office of the motel at which some of the jurors were sequestered. This was either an Albuquerque or an Amarillo paper. He took it to the room in which he was staying, and in looking it over noticed a four or five inch article therein relating to this case. It referred only to the fact that a jury had been selected. He told one or two of the jurors, who wanted to look at the paper, of the presence of the article and warned them not to read it. As far as he knows, none of the jurors read this paper, but he did see one juror "look at the paper."

The other bailiff testified that on the morning of September 19 she saw one of the jurors buy a "big paper," and she thought it was an "Oklahoma paper." As far as the bailiff observed, this juror read only the sports section. There is nothing in the record to even suggest that there was anything in this paper concerning this case or the trial thereof.

Defendant also introduced an article from the September 18 issue of the Tucumcari Daily News. It generally relates to what transpired during the first day of trial, and states that the two companions of defendant had implicated him in the killing out of which the murder charge arose. His complaints are that the article states the District Attorney " * * * is seeking the

*best* death penalty on first degree murder * * *" [Emphasis added], and, in referring to the arrest of defendant and his two companions, states they " * * * had been arrested * * * after a high speed chase by Missouri State Police two months ago." There is not the slightest evidence that any juror saw this article. This absence of evidence that the article was seen by the jury is apparently what prompted the request for permission "to attempt to acquire affidavits" from the jurors.

Defendant particularly relies upon the following cases to support his claim of error on the part of the trial court in denying his motion for a new trial and his request for leave to attempt to secure affidavits from the jurors: Griffin v. United States, 295 F. 437 (3d Cir. 1924); People v. Lessard, 58 Cal.2d 447, 25 Cal.Rptr. 78, 375 P.2d 46 (1962); Quintana v. People, 158 Colo. 189, 405 P.2d 740 (1965); Commonwealth v. Crehan, 345 Mass. 609, 188 N.E.2d 923 (1963).

In the Griffin case the court stated:

"It is the right of a defendant accused of crime to have nothing reach the mind of the jury concerning the case except strictly legal evidence admitted according to law, and if facts prejudicial to him reach the jury otherwise, it is the duty of the trial judge to withdraw a juror and grant a new trial. * * *"

The other cases relied upon by defendant also discuss the right of a defendant to be tried and judged on the basis of legally admitted evidence, and in this we fully agree. But the cases also point out that extra-trial information received by the jury must be prejudicial, or likely to be prejudicial, to defendant before he is entitled to a mistrial or a new trial. This is in accord with the general principle that a defendant cannot be heard to complain if he could not have been prejudiced. State v. Sanchez, 79 N.M. 701, 448 P.2d 807 (Ct.App.1968); State v. Holland, 78 N.M. 324, 431 P.2d 57 (1967); State v. Mase, 75 N.M. 542, 407 P.2d 874 (1965). Compare § 21–1–1 (61), N.M.S.A.1953.

There is nothing in the record to show that any juror read any article about the case. The jurors were instructed at the commencement of the trial that they were " * * * not permitted to read or listen to accounts * * *" of the case; they were kept together under the control of bailiffs; and they were finally instructed, before the case was submitted to them, that they were bound by their oaths to decide the case according to the evidence. Under these circumstances we cannot presume a violation by the jurors of the court's instructions and of prejudice to defendant. State v. Campos, 61 N.M. 392, 301 P.2d 329 (1956); State v. Sanchez, supra.

The distinction, between motives and influences which prompt a jury's verdict and evidence bearing upon the question of the existence of extraneous prejudicial matters which may have influenced the verdict, is of no importance in this case. For cases in which this distinction is made see Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); State v. Kociolek, 20 N.J. 92, 118 A.2d 812, 58 A.L.R.2d 545 (1955). The extraneous matters about which complaint is made did not come to the attention of the jurors.

■ Defendant next complains of a claimed unauthorized experiment conducted by a juror at the request of the District Attorney during closing argument.

During his closing argument, the District Attorney was discussing the trigger action on the murder weapon and stated to the jury: " * * * You all have examined this pistol, or you can, and I hand it to you if you want to do it right now to determine the pull, double action and single action. * * *"

Thereupon he handed the gun to a juror. The court immediately had it taken from the juror and instructed the District Attorney, in the presence of the jury, that no demonstration could be conducted. The District Attorney then proceeded with the argument without objection.

There is nothing in the record to support the claim that the juror cocked the gun and

pulled the trigger. We consider only the record. State v. Upton, 60 N.M. 205, 290 P.2d 440 (1955). We will not assume facts unsupported by the record. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct. App.1967).

■ Defendant claims he was denied a fair and impartial trial by reason of comments made by the court during the course of the trial. This claim is predicated upon the following exchange which occurred during the cross-examination of a defense witness upon the capacity of a person in a "drunken stupor" or "comatose state":

"Q. However, in your opinion, could a man of that nature, we have assumed the hypothesis, drive an automobile without an accident?

"A. Well, that's a variable situation. That depends on the road traffic and the condition he is in. Now, he couldn't, I certainly, if I had a vehicle I certainly wouldn't want him to drive.

"THE COURT: Well, do you think—

"A. And if he did—

"THE COURT: Do you think he could drive four or five hundred miles?

"THE WITNESS: No.

"Q. Be, would you say it would be impossible for him to drive four or five hundred miles, non-stop, after this drinking spree?

"MR. FROST: Your Honor, there is no evidence that this was a non-stop drive or that—

"THE COURT: The non-stopping is beside the point. And somebody relieved him a little bit, a very short distance, but he drove from here to Nevada, Las Vegas, or where was it?"

Defendant claims " * * * the trial judge's action in cutting counsel for defendant short before he could state his objection and abruptly informing him that 'non-stopping is beside the point' constituted an impermissible action on the part of the trial judge and indicated to the jury

that the court thought the defendant was guilty or at least looked with displeasure upon the defendant. * * * "

■ We do agree that it is improper for the court, during the progress of the trial, to make unnecessary comments, or take unnecessary action, which might tend to prejudice the rights of either of the parties litigant [State v. Parks, 25 N.M. 395, 183 P. 433 (1919)], and any comment by the court, even though unintentional, is prejudicial if the comment expresses or tends to express the court's view as to the guilt of the accused, as to what has or has not been proved, or a preference by the court as to the outcome of the case. Robinson v. State, 161 So.2d 578 (Fla.Ct.App.1964); Hamilton v. State, 109 So.2d 422 (Fla.Ct App.1959); Golden v. State, 45 Ga.App. 501, 165 S.E. 299 (Ct.App.1932). See also State v. Sedillo, 76 N.M. 273, 414 P.2d 500 (1966); People v. Montana, 252 App.Div. 109, 297 N.Y.S. 801 (1937).

As stated in State v. Sedillo, supra:

"A trial judge must at all times be judicious. He must not, by undue participation in the examination of witnesses, or by other conduct, convey to the jury that he favors one side or the other, and must not convey to the jury what he thinks the verdict should be. Because of his power and influence, and because of the tendency of the jury to place great emphasis upon what he says and does, the trial judge must be most careful not to say or do anything which would add to a party's burdens of proof, or detract from the presumptions to which a person charged with crime is entitled."

We have not overlooked § 21–1–1 (51) (2) (i), N.M.S.A.1953 (Supp.1967), which provides:

"The judge in so instructing the jury may make such fair comment on the evidence and the credibility of any witness as in his opinion is necessary for a proper determination of the case."

Nothing we have said is intended to detract from this right of the trial judge, and

nothing we have said does detract from "* * * *fair* comment on the evidence and the credibility of any witness * * * *necessary* for a *proper* determination of the case." [Emphasis added].

We cannot agree with defendant that the trial court's action in cutting his counsel short, and in stating that " * * * nonstopping is beside the point * * * *", indicated to the jury that the court thought defendant was guilty, or that the court looked upon defendant with displeasure. When read in the light of the questions and answers which preceded the exchange, and in the light of the evidence upon the questions of drinking and driving by defendant, we are of the opinion that defendant was not prejudiced by the court's remark.

Defendant's fourth point is that he " * * * was prejudiced and denied a fair trial by threats made by the husband of the alternate juror which were related to members of the jury."

During the evening of the first day of trial and after the court had recessed until the following morning, the husband of the alternate juror telephoned his wife at the motel room where she was sequestered with other jurors. He had been drinking and was displeased because his wife was serving on the jury.

The matter of the telephone calls came to the attention of the court, who conducted a hearing thereon commencing at 9:23 p. m. The defendant, his counsel, the alternate juror, her husband, the District Attorney, and some members of the Sheriff's office were present.

The alternate juror testified that she was in a room with four other women jurors and the bailiff when the calls were received from her husband; she was told by her husband that she would have no home if she continued to serve on the jury, and that he was going to call the F.B.I.; the four other jurors knew that her " * * * husband was unhappy about [her] being there, and that was the extent of it"; she did not know whether any of the other jurors learned from listening to her end of the conversations that her husband had told her she would not have a home if she continued to serve and that he was going to call the F.B.I.; there was a conversation by the jurors about some husbands being "* * * real good about something like this," and other husbands not being so good; and, in her opinion, the other jurors were not upset over the calls, but she was.

She was excused from further duty with the consent of both the State and defendant. On the following morning defendant moved for a mistrial on the ground that some of the jurors, present when the calls were received by the alternate juror, might possibly have overheard her end of the conversation and have construed the husband's statements to his wife as threats to these other jurors, thereby upsetting them. The motion was denied and the trial continued.

Defendant urges that a mistrial should have been granted since "the verdict of a jury should represent the concurring judgment, reason, and intelligence of the entire jury, free from outside influence from any source whatsoever." Bramlett v. State, 129 Neb. 180, 261 N.W. 166 (1935). There is nothing in the record before us to suggest that the jury was in any way influenced in arriving at its verdict by the telephone calls made to the alternate juror by her husband. In fact, the testimony of the alternate juror is that only four other jurors were aware of the calls and they were not upset thereby.

Defendant also urges that any unauthorized communication with the jury is presumptively prejudicial and " * * * no attempt was made by the state to show that these threats made by [the husband] did not 'directly or indirectly' influence some of the jurors * * * *". He relies upon Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), and State v. Gutierrez, supra.

The so-called "threats" were in no way concerned with the case or the evidence therein; they were expressions of displeasure by a husband to his wife over her

# 584

service on the jury; there is no evidence that these expressions were communicated to the other four jurors present, except they did understand the husband was unhappy about his wife being on the jury; and she was of the opinion the four jurors were not upset.

 As above stated, the court did inquire into the matter, and defendant participated in this inquiry. Nothing was brought out in this inquiry which suggested the telephone calls could in any way have prejudiced the verdict of the jury. A trial court is not obliged to search the mind and conscience of every juror to determine possible prejudice by every irregularity which arises during the course of a trial. Nothing said in Parker v. Gladden, supra, or in State v. Gutierrez, supra, requires a trial court to go further than was done here to dispel doubt as to the possibility of prejudice. The jurors were instructed as to their duty to decide the case solely on the evidence adduced before them, and there was nothing concerning these telephone calls which causes us to doubt they properly performed this duty.

Defendant's final point is that the cumulative effect of the claimed errors above discussed denied him a fair trial. He relies upon State v. Roybal, 76 N.M. 337, 414 P.2d 850 (1966); Nelson v. Cox, 66 N.M. 397, 349 P.2d 118 (1960); and State v. Gutierrez, supra.

Although these cases recognize the existence of the doctrine of cumulative error in New Mexico, none of them suggests its applicability to facts and circumstances such as are present in this case. The cumulative effect of the irregularities which arose during the trial of this case do not, in their aggregate, show defendant was denied a fair trial. Compare State v. Roybal, supra; Nelson v. Cox, supra; State v. Gutierrez, supra.

The judgment of conviction should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.