[No. 527.   September 30, 1893.]

## UNITED STATES OF AMERICA, DEFENDANTS IN ERROR, v. A. M. SWAN, PLAINTIFF IN ERROR.

CRIMINAL LAW—EMBEZZLEMENT OF MONEY ORDER FUNDS—FELONY.—Under section 1, chapter 144, supplement to Revised Statutes of the United States, providing that "any person who shall embezzle * * * any moneys of the United States shall be deemed guilty of felony," etc., a postmaster, convicted of embezzling money order funds of the postal department of the United States, is guilty of felony, such funds being "moneys of the United States," and section 4045 of the Revised Statutes of the United States providing that all such funds shall be deemed to be in the national treasury.

ID.—ADMISSIBILITY OF CERTIFIED TRANSCRIPT OF MONEY ORDER ACCOUNT BOOKS—CONSTITUTIONALITY OF SEC. 4646, REV. STAT. U. S.—On such prosecution, a certified transcript from the money order account books of the sixth auditor, showing a balance due from the defendant as postmaster to the postal department was properly admitted in evidence, under section 4046, Revised Statutes of the United States, providing that such transcript shall "be prima facie evidence of a

balance against him." This act is not in violation of the sixth amendment to the constitution of the United States, preserving to the accused, in all criminal prosecutions, the right to be confronted with the witnesses against him. It was not intended by this provision of the constitution that all written or documentary evidence should be inadmissible against a defendant in a criminal prosecution, but its object is to prevent certain abuses practiced in other countries, of permitting witnesses to testify in the absence of the accused, as a protection and guaranty against such abuses.

ID.—SEPARATION OF JURY—INSTRUCTIONS—VERDICT.—Where, on such prosecution, the jury were instructed that, if they agreed on a verdict during the night they could seal it up, give it to their foreman, then separate, and come into court at its opening on the following morning, and return the verdict; and the jury reached an alleged verdict, after having been out all night considering it, and sealed it up and gave it to their foreman, and then separated, and mixed and conversed with the people until the opening of the court, about three hours afterward, when they came into court, and, through their foreman, returned the alleged verdict, and it was found on opening it that it was so defective that no legal judgment could be rendered upon it, and the court, thereupon, wrote out a verdict finding the defendant guilty, and had it read to them, and, upon polling the jury, one of them answered that it was not his verdict, and the jury were then sent out again, with instructions to deliberate upon their verdict, and that, if they could find the verdict written out by the court to be their verdict, to sign it, and return it into court; and they were further instructed that they were not bound to find that verdict, but, if they chose, might find the defendant not guilty; and the jury retired to the jury room, were locked up by the bailiff, and in about an hour returned into court the verdict written out for them by the court,—Held:  That the separation, and mingling and conversing, of the jury, with the general public, after the case had been submitted to them, and before reaching a verdict, was such misconduct as was presumably injurious to the rights of the accused, in the absence of anything in the record showing the harmlessness of their acts, and entitled him to a new trial.

ERROR, from a judgment convicting defendant of embezzlement, to the Second Judicial District Court. Judgment reversed.

The facts are stated in the opinion of the court.

BERNARD S. RODEY for plaintiff in error.

The charge against the accused being a felony, the admission in evidence of the certified transcript from

the office of the sixth auditor of the treasury was in violation of his right, under the sixth amendment to the constitution of the United States, "to be confronted with the witnesses against him," and error. Also a violation of his right, under the New Mexico Bill of Rights, to meet them face to face. Comp. Laws, sec. 673; Hornbuckle v. Toombs, 18 Wall. 648.

Had the defendant refused to make any defense, and moved the court, at the end of the prosecution, to instruct the jury to find him not guilty, the court would have been obliged, upon such evidence, to do so. A defendant can not even waive the right to be discharged when such is the only evidence against him any more than he could waive the right to trial by jury, after pleading not guilty. Territory v. Kee, 5 N. M. 510, and cases cited; United States v. Taylor, 11 Fed. Rep. 470.

Even in civil cases the acts of congress, making transcripts from the government departments evidence against public debtors, establishes a new rule of evidence in derogation of the common law. United States v. Harrill, 1 McAl. 243; Meyers' Fed. Dec., Book E., sec. 2832.

There can be no question but that in a case like this, where the punishment may be by imprisonment for a period of not less than six months nor more than ten years, and a fine in double the amount embezzled, the offense is a felony. Sec. 4046, Rev. Stat. U. S.

It is certainly a felony under section 669 of the territorial law; and the mode of procedure in the territorial courts, in the absence of some express provision or rule of United States courts to the contrary, must be according to the territorial statutes and rules. Clinton v. Englebrecht, 13 Wall. 434; Hornbuckle v. Toombs, 18 Wall. 648; Davis v. Billsland, Id. 659; Bent v. Thompson, 138 U. S. 114.

"Separation is not allowed in any case, after the jury retire to find their verdict, until it is found, and

delivered in open court. If it occurs it vitiates the ver-
dict. 12 Am. and Eng. Encyclopedia, 374, 375. And
this rule is not changed in the case of Territory v.
Nichols, 3 N. M. (Gil.) 108.

In a case like this where the jury were so long separated, and then brought in such a verdict, the law
raises a presumption that the defendant was prejudiced.
16 Am. and Eng. Encyclopedia of Law, 558–564.

The writing out of the second verdict by the court
was in effect a decision of the case by him, and com-
ment upon the weight of the evidence, contrary to sec-
tion 2055, Compiled Laws, and governed by that
section under the rule established by the supreme court
of the United States. Clinton v. Englebrecht, 13
Wall. 434.

EUGENE A. FISKE, United States district attorney,
for the United States.

O'BRIEN, C. J.—The defendant below, A. M.
Swan, was indicted, as postmaster at Gallup, for the
embezzlement of five hundred and sixty odd dollars,
alleged to belong to the money order funds of the
postal department of the United States. He entered
a plea of not guilty, was tried and convicted (the jury
finding the amount embezzled to be $139), and was
thereupon sentenced to pay a fine of $200. The cause
is here for review upon writ of error. The indictment
was drawn under the provisions of section 4046 of the
Revised Statutes of the United States, the portions of
which, pertinent to the disputed points involved in the
case, are as follows: "Every postmaster  *   *   *
employed in or connected with the business or opera-
tion of any money order office, who converts to his
own use, in any way whatever, or loans, or deposits in
any bank, except as authorized by this title, or ex-
changes for other funds, any portion of the money
order funds, shall be deemed guilty of embezzlement;

\*   \*   \*   and any failure to pay over or produce any money order funds intrusted to such person, shall be taken to be prima facie evidence of embezzlement; and upon the trial of any indictment against any person for such embezzlement, it will be prima facie evidence of a balance against him to produce a transcript from the money order account books of the sixth auditor." The chief errors urged by plaintiff in error to secure a reversal of the judgment are, in substance: First, the admission in evidence, over defendant's objection, of the certified transcript from the money order account books of the sixth auditor of the treasury, purporting to show the balance due from the defendant to the postal department; second, separation of the jury before they had agreed upon a verdict, after the cause had been submitted.

In view of the animated controversy between respective counsel in the court below as well as in this court as to whether the offense charged is

EMBEZZLEMENT
of money order
funds: felony.

a felony or a misdemeanor, before proceeding further, we hold that the offense is a felony; not because the territorial enactments declare similar crimes felonies under the laws of the territory, but because congress has so designated the crime of embezzlement. It is provided by chapter 144, section 1, supplement Revised Statutes of the United States, "that any person who shall embezzle \*   \*   \*   any moneys of the United States shall be deemed guilty of felony," etc. The indictment is predicated upon the fact that the money in controversy—postoffice money order funds—belongs to the United States. Indeed, there can be no doubt about the correctness of this proposition, in view of the language of section 4045 of the Revised Statutes of the United States, providing that all such funds shall be deemed to be in the national treasury. Defendant's counsel tries to support with much force and earnestness his first assign-

ment of error. He insists that the certified transcript from the books in the office of the sixth auditor, showing a balance due from the defendant as postmaster to the postal department, was erroneously admitted in evidence, and that his conviction, mainly supported by such proof, was illegally procured. Such copy, at common law,. would be inadmissible as evidence in any case, civil or criminal. But congress has declared, in the act creating or defining the offense, that à "transcript from the money order account books of the sixth auditor shall be prima facie evidence of a balance," and we fail to find anything violative of defendant's rights in such enactment. Documentary evidence, when pertinent and material, may be as competent upon the trial of criminal as upon the trial of civil causes; and it is not disputable that, when the original is competent, congress may give the like effect to a transcript or copy. Were such not the case, the conviction and punishment of many guilty persons, especially if public officers, would often be impracticable. It is true, the constitution of the United States—so confidently invoked by defendant's counsel in his brief as well as in his oral argument in support of his contention—provides "that in all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him," but clearly no one ever seriously contended, at least before, that under this provision none but oral testimony is admissible upon the trial of. criminal causes. The record does not disclose upon what ground objection was made to the admission of the transcript. Counsel must have meant—for that is the burden of his oral argument before this court—that all written or documentary evidence is inadmissible against a defendant upon a criminal trial. In support of this position he cites the provision of the federal constitution above set

*Margin note: ADMISSIBILITY of certified transcript of money order account books: constitutionality of section 4046, Rev. Stat. U. S.*

out. But that can have no such meaning. It is a
mere formal protest and guaranty against certain
abuses that had been practiced before the court of star
chamber, and perhaps other tribunals, in England and
other countries, wherein witnesses were required, or at
least allowed, to testify in the absence of the accused.
But manifestly it does not mean that in the trial of a
person charged, for instance, with the crime of polyg-
amy, the official record of the marriages is inadmissible
on the ground that oral testimony only is competent
to establish the fact of marriage. The money order
account books of the several money order postoffices
are kept by sworn officers in the office of the sixth
auditor. They are, by law or rules of the department,
presumed to contain a correct statement, furnished by
the local postmaster himself, of all moneys received on
account of money orders issued. The record before
us does not show how the balance of $562.56 against
the defendant was ascertained. But the statement
showing such balance is properly certified "to be a true
and correct transcript from the money order account
books of the postoffice department of the account of
A. M. Swan, late postmaster at Gallup." This is
sufficient. The law requires such accounts to be cor-
rectly kept; hence they are not based on estimates or
conjectures, but on data supplied by the defendant
himself. We find no error in the admission of the
certified transcript. *U. S. v. Forsythe*, 6 McLean,
C. C. 584; *Shivers v. State*, 53 Ga. 149. The con-
struction given by the defendant's counsel to the sixth
amendment to the federal constitution is not tenable.
His argument proves too much, as it would practically
exclude from all criminal trials documentary evidence
of every kind.

But the second ground of error urged—separation
of the jury before finding a verdict, etc.—is more

serious, and, in our opinion, must prove fatal to the
judgment.   As the record on this point is
brief, it is transcribed in full:  "The cause
was then given to the jury, who retired
about 4 o'clock in the afternoon of the tenth day of
March, A. D. 1892, under instructions from the court
that if they agreed upon a verdict during the night
they could seal it up, and give it to their foreman, and
then separate, and afterwards come into court at the
opening of the following morning session, and return
the verdict.  The jury did arrive at a so-called 'verdict'
at about 7 o'clock on the following morning (March
11), after having been out all night considering of the
same, and sealed up and gave such alleged verdict to
their foreman, and then dispersed, and went about
their business in the community, and to their homes,
and mixed with the people, until the opening of court
some three hours afterwards, at 10 o'clock, a few
minutes after which they came into court, and there,
by their foreman, returned such alleged verdict, which
was and is in words and figures as follows:  'We, the
jury, have come to the conclusion, and unanimously
agree, that the defendant, A. M. Swan, to the best of
our understanding, and considering the weight of the
evidence, find that he is indebted to the government
of the United States the sum of $139.09, it being as
near as we can ascertain from the money missing from
the Gallup postoffice March 11, 1892.'  (This verdict
as returned was in the Spanish language.)   That there-
upon the court, after looking at the so-called 'verdict,'
and having it translated, wrote out the following
verdict:

" 'We, the jury, find the defendant guilty as charged
in the indictment, and that the amount of money
embezzled was the sum of one hundred and thirty-nine
dollars;' had it read to them, and inquired of them if
that was their verdict.  Some of them answered 'Yes,'

*Marginal note:* SEPARATION of jury: instructions: verdict.

but, on being polled, the second juror who responded answered 'No,' that it was not his verdict. The court then told the jury to go back to their quarters in charge of the bailiff, to deliberate upon their verdict, and that, if they could find that verdict as written out by the court to be their verdict, to sign it, and return it into court; and further instructed them that they need not necessarily find that verdict, but might find the defendant not guilty if they so chose, or words to that effect. They retired to their quarters, were locked up by the bailiff, and something like an hour or so later returned into court the verdict so written out for them by the court,—in fact the very same paper, duly signed by their foreman,—and answered that it was their verdict, and affirmed such fact on being polled." Such is the history of the error complained of as disclosed by the record. There are no provisions in the statutes of the territory regulating the practice in such particulars, hence we must be controlled by the rules recognized at the common law. The decisions of the state courts, predicated, as they are, to a great extent upon local statutes, are not always in harmony upon the subject. The court correctly refused to receive the "sealed verdict," as no legal judgment could be entered upon it. It was not a finding upon the issue, determining the guilt or innocence of the accused; and a finding not determining that fact is no verdict. The jury should have been kept together until they had agreed upon a verdict, and when they separated before such agreement they did so in violation of the instructions given them by the court, and, even if that could change the result, without the express or implied consent of the defendant. It is true they no doubt believed that they had agreed upon a verdict before the separation, but in that belief they were mistaken, as correctly held by the trial court. But jurors' mistakes can not be allowed to impair the rights of the party accused. The rules of

the common law require, especially in trials of felonies, that, after the cause is submitted, and the jury charged by the court, no separation intervene; that no intermingling with the public be allowed until a verdict is returned. This, of course, does not include the temporary withdrawal of a juror from his fellows under charge of a bailiff for a proper or necessary purpose. If there be an exception to the general rule, it is applicable only to civil causes or misdemeanors, but we do not find that a departure has ever been tolerated in case of felonies in the absence of statutory enactment. The rule favored by the supreme court of the United States appears to be that when there is nothing in the record showing the harmlessness of the separation, the unlawfulness of such conduct is sufficient to warrant a presumption that the verdict was not properly found against the defendant. The rule heretofore announced, as applied to the facts in this case, in Edie v. Territory, 6 N. M. 555, is not in conflict with these views; and, even if it were incorrect in the statement, upon a rehearing of the latter cause at the present term we felt bound to modify the rule as therein expressed in deference to the doctrine announced by the federal supreme court in Mattox v. U. S., 146 U. S. 140. The present is a United States case, and in its trial the courts of the territory should conform to the rules established by the supreme court of the United States, as contradistinguished from those of the state courts. The federal supreme court, adopting the rule laid down by Judge Wharton, says: "Hence the separation of the jury in such a way as to expose them to tampering may be reason for a new trial, variously held as absolute, or prima facie, and subject to rebuttal by the prosecution; or contingent, on proof that tampering really took place." Resuming, Chief Justice FULLER, speaking for the court, thus declares the rule: "Private communications, possibly prejudicial, between jurors and third

persons or witnesses or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness if made to appear.'' Mattox v. U. S., supra. This jury remained separated for three hours, mingling and conversing with the general public during all that time. There is nothing in the record disclosing the harmlessness of such transaction. On the contrary, it appears that the jurors during this protracted separation associated and conversed with the citizens of Albuquerque, exposed to all the unfair influences that might be brought to bear upon them by persons interested in the result. They may have heard nothing to disturb convictions formed upon the evidence submitted in court, and they may have heard a great deal. In such case we hold, that, when a jury trying a capital or noncapital felony separate, after the cause has been submitted, before reaching a verdict, such misconduct is presumably injurious to the rights of the accused in case of conviction, and entitles him to a new trial. It follows that the court below erred in denying defendant's motion for a new trial; hence the judgment below must be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

SEEDS and FREEMAN, JJ., concur.