# 𝔖taunton

FLOYD M. SMITH V. COMMONWEALTH.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*W. J. Austin, Jr.,* and *T. W. Messick,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiff in error was tried and convicted upon a warrant which alleged that "Floyd M. Smith (white) on or about the 29th day of April, 1937, * * * did unlawfully conduct and permit a nuisance to exist in the City of Roanoke, that is to say—did permit the storage of a large quantity of whiskey having been previously refused a license to sell and store alcoholic beverages."

Upon the trial of the accused by a jury and on the plea of not guilty, the Commonwealth, to maintain the issue upon its part, introduced as witnesses certain police officers of the city of Roanoke. There was no evidence adduced in behalf of the accused.

The record displayed that the accused leased from Mary McNelis and others certain premises known as 109½ East Church Avenue, and operated thereon a lodging house under the name of Arcade Rooming House. On April 29, 1937, a search of the house was made by the officers, who detailed a result of their search as follows: When they entered the premises they found a buzzer or a signal-device attached to the front door of the first floor; at the head of the stairway, a curtain through which a person could look to ascertain who was approaching, and the said door securely locked. Upon gaining admittance to the second floor, they found the "rooming house" in this condition: In a room on the right-hand side of the stairway there was a large table covered with a heavy canvas and several chairs surrounding it. There was a drop light, with a shade, suspended over the table, and in the room were seven men and one woman and numerous decks of cards. Upon a further search of the premises, the officers found the following condition to exist, as shown by the evidence of Sergeant Bruce: " * * * on the outside of the room was a large water-cooler and what is known as a highboy—it is one portion of a cabinet—and

in that cabinet was two quarts of Port Wine, one quart Orange Distilled Gin and one quart of Polo Distilled Gin, one quart of Cobbs Creek Whiskey, one quart of Old American Whiskey, two quarts of Mint Springs Whiskey, one quart of Golden Eagle Whiskey, two quarts of Town Tavern Whiskey, one quart of Fleet Street Whiskey and two quarts of AMS Whiskey. Now this was found in a cabinet by the table with a drop light, nineteen small whiskey glasses on it, a soft-drink box on the left hand side of the hall with quite a bit of soft-drinks in it, and in the rear, in another highboy, we found eighteen decks of playing cards, two pints of Crab Orchard Whiskey, two pints of Old American Whiskey, two pints of Golden Eagle Whiskey, six pints of Crab Orchard, three pints of Mint Springs Whiskey, one quart of Fleet Street Whiskey, two quarts of Town Tavern Whiskey, one quart of Mint Springs Whiskey, two quarts of Golden Eagle Whiskey, three quarts of Old American Whiskey, two quarts of Cobb Creek Whiskey, one quart of Indian Queen Corn Whiskey, one-fifth Cavalier Gin, one-fifth Polo Club Gin, one pint of Polo Gin and one pint of Orange Gin and quite a few empty beer bottles." Several of the people found in the house, while not drunk, were under the influence of liquor.

It is further shown that for a period of time prior to the search the police had placed the premises under surveillance and it was shown that various types of people frequented the place, especially on Saturday night; that some of the visitors went into the house apparently sober and came out in such an intoxicated condition that they were arrested on a charge of drunkenness.

It is assigned as error, "that the trial court erred in its ruling that section 55 of the Alcoholic Beverage Control Act was valid and constitutional," for the reason that it is vague, uncertain and indefinite in its terms.

Section 55 of the A. B. C. Act is found in Code, section 4675 (55), and reads as follows:

"All houses, boat-houses, building, tents, club, fraternity and lodge rooms, boats, cars and places of every description

including drug stores, where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to the law by any scheme, or device whatever, shall be held, taken and deemed common nuisances. Any person who shall maintain or who shall aid or abet or knowingly be associated with others in maintaining such common nuisances, shall be guilty of a misdemeanor and in addition thereto, judgment may be given that such house, building, tent, boat-house, car or other place, or any room or part thereof, be closed up, but the court may upon the owner giving bond in the penalty of not less than five hundred dollars and with security to be approved by the court, conditioned that the premises shall not be used for unlawful purposes, or in violation of the provisions of this act for a period of five years turn the same over to its owner; or proceeding may be had in equity as provided in section 4675 (56)."

It is the contention of counsel for the accused that section 55 does not inhibit the storing of alcoholic beverages nor the dispensing or giving away of alcoholic beverages if said beverages *were lawfully acquired*. While it is shown by the evidence of the Commonwealth that the whiskey bottles bore the A. B. C. stamp, there is no evidence to support the contention that the whiskey was lawfully acquired.

 The case of the Commonwealth as to the unlawful storage or sale of liquor is based wholly upon circumstantial evidence and should be scanned with caution. However, when the circumstances proven are of such a character and tendency as to produce upon a fair and unprejudiced mind the firm conviction that the accused is guilty of the offense charged, then the Commonwealth has overcome the presumption of innocence which surrounds the accused and circumstantial evidence is sufficient to sustain a conviction. In this case the evidence is, in our opinion, conclusive of the question that accused was the operator of what is commonly termed a "nip joint." That fact being established, it is needless to enter upon a discussion of the vagueness or un-

certainty of the language employed in section 55 of the A. B. C. Act.

It is our conclusion that the accused has had a fair trial upon the evidence, that no error of law was committed by the trial court in its instructions to the jury, and that no verdict other than a verdict of guilty could have been properly returned by the jury.

The judgment of the trial court is affirmed.

*Affirmed.*