FREDERICK v. STATE OF INDIANA.

[No. 29,789. Filed June 21, 1960.]

*Richard Sproull, Charles E. Hughes* and *F. LeRoy Wiltrout,* all of Elkhart, for appellant.

*Edwin K. Steers,* Attorney General, *Richard M. Givan,* Assistant Attorney General, and *John A. Pushor,* Deputy Attorney General, for appellee.

LANDIS, J.—Appellant was charged with second-degree arson and was found guilty after a trial by jury which returned with their verdict a recommendation for a suspended sentence. Appellant was sentenced for an indeterminate term of one to ten years.

Error is assigned in overruling the motion for new trial which among other things asserted the verdict was not sustained by sufficient evidence and was contrary to law.

Appellant contends that there is no evidence or inferences supporting the verdict from which the jury could have found that appellant set fire to and burned the building, which he is charged with doing in the affidavit.

The building in question was of cement block and wood construction and was located west of the city of Elkhart, Indiana, on U. S. Highway 33. At the time of the fire it was owned by appellant's wife and was occupied by the K & N Paint Shop for the purpose of painting trailers and mobile homes.

The building had been constructed by appellant, who was in the construction business, for the use of a sewing machine company which occupied the building for some months but failed to pay its rent. Appellant and

wife had executed a mortgage in the sum of $8,000.00 on the property with the understanding that the rent received from the sewing machine company would be applied on the mortgage. On failure to make payments on the mortgage, a foreclosure suit was brought which was pending at the time of the fire.

It further appeared that three fire insurance policies on the property totalling $21,000.00 were in force at the time of the fire. The property was estimated to be worth from $12,000.00 to $20,000.00. The fire damage came to $3,400.00, and appellant's wife after the fire sold the property, and the revenue stamps indicated a maximum consideration of $10,000.00.

Prior to the fire there had been a recommendation by fire officials that the furnace in the building be properly enclosed, or placed outside as paint shops were considered hazardous. The furnace had never been used.

The day before the fire three of appellant's construction employees started to build a partition around the furnace. Appellant's construction company ordered 200 gallons of oil delivered to the K & N Paint Shop that day, and when the tenants asked who was to pay for it, appellant stated he would. Appellant stated he got the oil to start the furnace and see if it was in running order. Partner Neal of the paint company said the company expected to pay for the fuel oil and couldn't understand when appellant said he would pay for it. During the afternoon the paint shop tenants expressed dissatisfaction with the way the furnace enclosure was being constructed and after a discussion appellant agreed to put the furnace outside. Concrete was then poured outside the building for the outside furnace room.

Evidence as to appellant's whereabouts on the night (September 20) before the fire, was introduced by the

State, to the effect that appellant told a state police officer he left his shop at 4:00 or 5:00 p.m. and had supper at home with his wife, his son and the son's wife. That after supper his son and the two wives went to the Hump Restaurant leaving a small child with him at the house. About 11:00 p.m. they came home, and on going to the bathroom found water was squirting onto the floor from a broken copper tube in the toilet. That appellant and his son drove to the construction company, got a length of pipe, that they drove by the K & N Paint Shop to check the slab of cement, but neither got out of the car; that they went to a tavern to look for one of their employees, that appellant got a six pack of beer and drove directly home, arriving according to the son about midnight; that appellant was at his home until notified of the fire at 8:00 o'clock in the morning.

Evidence as to the time of the fire from the fire department was that they received a call about 1:45 a.m. on September 21, that there was a smell of oil burning on U. S. Highway 33 west, but it was foggy and no fire was discovered; that at 3:15 a.m. the fire department received another call for the K & N Paint Shop, and drove out and extinguished the fire.

There was evidence the fire was of an incendiary origin, to-wit: A device connected to the electric light circuit and containing four carbon rods wired together similar to the core of a hot plate, was in a partially burned tomato basket on top of a pile of charred papers. The fire chief testified in his opinion this started the fire. Paint was dumped on the floor and oil was dripping onto the floor from a broken oil line from the tank outside the building. Some suspicious looking shoe prints were found but their identity could not definitely be established.

,There was further evidence that on the morning after the fire was out, when the firemen left about 5:30 or 6:00 a.m., the partners of the K & N Paint Shop, instead of leaving the building with the officers decided to do some detective work and concealed themselves among the trees to observe who might come by. About 6:05 a.m. in the semi-darkness a 1956 black and white Plymouth came from the east with two people in it and passed the building after slowing down in front of it. Shortly afterward the same car came back headed east and the partners, Neal and Kyle, pursued them in a car and wrote down their license plate number—which was found to be the number for appellant's Plymouth sedan. Although the car sped away Neal and Kyle said they could recognize the occupants of the car as being appellant and his son.

There was evidence as to keys to the paint shop— appellant told a state police detective the former tenant sewing machine company had several sets and returned some, but possibly not all, that he gave K & N Paint Company two sets and he might have one at the construction company. Neal testified he had no way of knowing how many people besides his partner and appellant had keys. There was evidence that employees sometimes went to work by getting in a window which had no lock.

It is apparent from an examination of the above evidence that it does not directly connect appellant with the crime of burning the building in question, and the conviction must therefore rest, if it is to stand, on circumstantial evidence. The fire was unquestionably of an incendiary origin. The evidence reveals that appellant was one among others who had access to the building which was burned, and had an opportunity to commit the crime, but that is all it

proves. Some of his conduct based on his statement to the state police detective and some of the physical evidence, it is true, is consistent with appellant's guilt, but it is also not inconsistent with his innocence. And this Court has held that proof of a nonexclusive opportunity to commit a crime is not enough to support a conviction.

*Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445. That there was doubt in the jury's mind in the instant case may well have given rise to their recommendation of a suspended sentence.

The facts in the case before us are strikingly similar to those in *Myers* v. *State* (1954), 233 Ind. 66, 68, 116 N. E. 2d 839, wherein it appeared fire had damaged a commercial building in Bourbon, Indiana, and the evidence established that the fire was of incendiary origin. There was no direct evidence of appellant's guilt, but the state relied upon circumstantial evidence. The question confronting the Court was whether or not there was sufficient evidence of circumstances from which the jury might reasonably have drawn an inference of guilt.

In that case we said:

"The evidence discloses that appellant was one of several who had an opportunity to commit the offense. It further discloses that he had conversations with the officials who were investigating the fire. But what he said in the course of those conversations, although not inconsistent with guilt, were consistent with innocence, and we have held that proof of a non-exclusive opportunity to commit a crime is not enough to support a conviction. *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445.

"It is possible that appellant did, in fact, prepare the stage and set the fire. But we think the jury's misgivings, as indicated by their recommendation of leniency, were well founded. Certainly it cannot

be said that the circumstances proved pointed sure-ly and unerringly in the direction of guilt. . . . In our opinion the evidence was not sufficient to sustain the verdict." See also: *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. 2d 223.

We are forced to conclude in the case before us that the evidence is wholly insufficient to sustain the verdict of the jury.

The remaining contentions of appellant need not be discussed in view of the result we have reached.

Judgment reversed with directions to sustain the motion for new trial.

Jackson, C. J., and Bobbitt, Achor and Arterburn, JJ., concur.

NOTE.—Reported in 167 N. E. 2d 879.