*492 P.2d 1279*

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Sylvester ATWOOD, Defendant-Appellant.**

No. 685.

Court of Appeals of New Mexico.

Dec. 3, 1971.

Certiorari Denied Jan. 18, 1972.

Ronald M. Higginbotham, Hunker, Fedric & Hughes, Roswell, for appellant.

David L. Norvell, Atty. Gen., Ray Shollenbarger, Agency Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge

Convicted of arson, defendant appeals. The issues are: (1) venue; (2) unauthorized contact with a juror; (3) sufficiency of the evidence; and (4) sequestration of the jury.

*Venue.*

Defendant moved for a change of venue, alleging an impartial jury could not be obtained because of "public excitement or local prejudice." The trial court held a hearing on the motion. Defendant's evidence was to the effect that articles in the Roswell newspaper had prejudiced the residents of Chaves County against defendant so that an impartial jury could not be obtained. The State introduced evidence to the contrary. The trial court denied the motion. No findings of fact on the question of venue were requested and none were made. On the morning of trial, defendant renewed the motion, supporting the renewal with a Roswell newspaper article about the hearing on the venue motion and its denial. The trial court denied the renewed motion.

Where, as here, there was conflicting evidence, it is within the discretion of the trial court to grant or deny the motion for change of venue. State v. Vaughn, 82 N.M. 310, 481 P.2d 98 (1971), cert. denied, 403 U.S. 933, 29 L.Ed.2d 712, 91 S.Ct. 2262 (1971). Defendant contends the trial court abused its discretion in denying the motion. The basis of this argument is that the trial court should have believed the defendant's witnesses and exhibits. Where, as here, the trial court's ruling is supported by substantial evidence, the trial court did not abuse its discretion in not accepting as true the evidence introduced in support of the motion. See Deats v. State, 80 N.M. 77, 451 P.2d 981 (1969). The fact that newspaper articles were introduced in support of the motion does not change the rule. Even with the newspaper articles in support of the motion, the trial court, on the evidence presented, could properly deny the motion. State v. Foster, 82 N.M. 573, 484 P.2d 1283 (Ct.App.1971); State v. Herrera, 82 N.M. 432, 483 P.2d 313 (Ct.App.1971). This is also true as to the renewal of the motion, where there was one newspaper article in support of the motion and no opposing evidence. The uncontested newspaper article supporting the renewed motion did not require that venue be changed because the article in itself did not establish public excitement or prejudice. State v. Foster, supra.

The foregoing assumes the venue issue is properly before this court even though findings were neither requested nor made. See State v. Fernandez, 56 N.M. 689, 248 P.2d 679 (1952); State v. Mosier, (Ct. App.), 83 N.M. 213, 490 P.2d 471, decided September 17, 1971.

*Unauthorized contact with a juror.*

A witness, on the stand immediately prior to the noon recess on the first day of trial, rode in a car with some of the jurors who were being taken to lunch. Upon arrival at the cafe, the witness sat down at a table where some of the jurors were seated. Upon being informed of this, the trial court interrogated four of the jurors

and the witness. They were interrogated one at a time, in private. The interrogation was by the judge and by defense counsel.

The testimony at the interrogation was that there was no conversation about the case either in the ride to the cafe or at the cafe. There is evidence that some comment was made about the weather, and possibly, that the witness remarked that it was hard to pick a jury. The evidence is that little, if any, conversation could have occurred at the cafe because as soon as the witness sat down the bailiff moved him away.

After the above evidence was received, defendant moved for a mistrial, which was denied. Defendant claims the trial court erred in denying the motion for a mistrial. He asserts that the contacts between the witness and some of the jurors raised a presumption that defendant was prejudiced and that the State failed to overcome the presumption.

We agree that the unauthorized contacts between the witness and some of the jurors raised a presumption of prejudice. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App.1967). We also agree that the burden was on the State to overcome the presumption. State v. Gutierrez, supra. Compare State v. Dickson, 82 N.M. 408, 482 P.2d 916 (Ct.App.1971). The trial court's denial of the motion for mistrial was, in effect, a ruling that the presumption had been overcome. State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969), cert. denied 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 279 (1970).

Defendant's claim is that the interrogation by the court was insufficient to overcome the presumption of prejudice. He claims the questioning should have been more extensive, and implies that the number of jurors questioned was insufficient. We disagree. Jurors questioned included one who sat by the witness in the car and one beside whom the witness seated himself in the cafe. The four jurors interrogated, as well as the witness, all testified there had been no discussion of the case being tried. The evidence taken by the court is sufficient to sustain the trial court's ruling. State v. McFerran, 80 N. M. 622, 459 P.2d 148 (Ct.App.1969); State v. Thayer, 80 N.M. 579, 458 P.2d 831 (Ct. App.1969); State v. Gutierrez, supra. Compare State v. Maes, 81 N.M. 550, 469 P.2d 529 (Ct.App.1970).

Here, as in the first issue discussed, we have assumed the issue is properly before us. The record fails to show, however, that defendant's claim, that the interrogation was insufficient, was ever called to the trial court's attention; rather, it is raised here for the first time. Compare State v. Ford, 81 N.M. 556, 469 P.2d 535 (Ct.App.1970).

*Sufficiency of the evidence.*

The arson statute, § 40A–17–5(A), N.M. S.A.1953 (Repl.Vol. 6, Supp. 1971) reads:

"Arson consists of maliciously or willfully starting a fire or causing an explosion with the purpose of destroying or damaging any building, occupied structure or property of another, or bridge, utility line, fence or sign; or with the purpose of destroying or damaging any property, whether the person's own or another's, to collect insurance for such loss."

The instructions told the jury that a material allegation was that defendant ". . . did maliciously or willfully start a fire or cause an explosion with the purpose of destroying or damaging a building located at 802 South Main Street, Roswell, belonging to the New Mexico Savings and Loan Association or with the purpose of destroying or damaging property to collect insurance for such loss." Three "ors" are found within this material allegation. Thus, various alternatives were charged.

No claim is made that the alternative charge was erroneous. See State v. Hollowell, 80 N.M. 756, 461 P.2d 238 (Ct.App. 1969). The alternatives in the charge are pointed out because defendant challenges the sufficiency of the evidence. If the evidence is sufficient as to one of the alterna-

tives, defendant's attack on the evidence fails.

One of the alternatives charged is that defendant willfully caused an explosion with the purpose of damaging the building of the savings and loan association. This alternative does not involve insurance and the evidence pertaining to insurance will not be reviewed.

Defendant's business (television sales and service) was located in the building of the savings and loan association. There was an explosion and fire at defendant's business at approximately 2:00 a. m. on August 5, 1970. There is evidence that the explosion and fire resulted from the use of dynamite and gasoline. Evidence of bottles filled with gasoline, primer cord and the physical arrangement of these items inside defendant's business permits the inference that the explosion was willfully caused and was for the purpose of damaging the building. Specifically, the evidence fully supports a determination that arson did occur under the alternative charge that we are reviewing. Defendant does not claim that arson did not occur.

■ Defendant's claim is that the evidence is insufficient to show that he was the person who committed the arson. This claim has four aspects: direct evidence that defendant was the arsonist; circumstantial evidence that defendant was the arsonist; direct evidence that defendant aided and abetted the arsonist; circumstantial evidence that defendant aided and abetted the arsonist. As to the first three aspects, we agree that the evidence is insufficient to connect defendant with the arson. We disagree as to the fourth. We hold that the circumstantial evidence that defendant aided and abetted the arsonist, who is unknown, is sufficient to sustain the conviction.

The circumstantial evidence of aiding and abetting follows. The explosion at defendant's business occurred at approximately 2:00 a. m. on Wednesday, August 5, 1970. The building was locked at the time and there is evidence of no forcible entry into the building. Investigators found a five gallon water bottle filled with gasoline with primer cord wrapped around it. A "cap" was attached to the primer cord. This bottle was intact. A second bottle was also found, but it was broken. There is evidence that a similar bottle had been on the premises prior to the arson. Sometime in July, defendant had borrowed another similar bottle from a business acquaintance.

There is evidence that sometime in July, prior to the arson, defendant contacted Mr. Sparks in Hobbs and asked him to come to Roswell. When defendant met Sparks in Roswell, defendant asked Sparks if Sparks could get defendant some fuse and caps. Sparks said he could get whatever defendant wanted. Subsequently, Sparks purchased some caps, dynamite and fuse.

On the Tuesday evening prior to the arson, defendant was in Hobbs. Defendant met with Sparks and asked Sparks if he had any caps. "He told me that his friend was ready for them." According to Sparks, he sold defendant one stick of dynamite, two feet of fuse and about five caps for a price of $100.00. Defendant would not, however, handle these items, but insisted that Sparks bring these items to Roswell. The result was that Sparks rode to Roswell in a car driven by defendant. Sparks had the "stuff" in his pocket. Upon arriving at Roswell, defendant took Sparks to a motel where Sparks registered under an assumed name. As to the items that Sparks sold to defendant: "Well, Atwood told me to just leave it outside the door. The party would pick it up." Defendant left in his car and Sparks, on foot, went to get something to eat. Sparks identified the cap found attached to the primer cord wrapped around the unbroken water bottle as a dynamite cap of the "same type" that he sold to defendant.

The motel operator testified that Sparks registered at the motel about 11 o'clock. He was brought to the motel in a car driven by another man (defendant). Another witness testified that he observed defend-

**420**

ant, in defendant's car, at the motel about midnight. At this time a woman was with defendant in the car.

An employee of defendant testified that on Tuesday morning preceding the arson he found six caps similar to the dynamite cap found attached to the primer cord. These items were found on the floor of the premises scattered around the leg of defendant's workbench when the employee came to work that morning. This employee also testified that another employee had found caps, of the same type, that Tuesday morning.

To be an aider and abetter one must share the criminal intent of the principal; there must be a community of purpose in the unlawful undertaking. State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct. App.1970). Aiding and abetting may be shown by evidence of acts, conduct, words, signs, or any means sufficient to incite, encourage or instigate commission of the offense. State v. Ochoa, 41 N.M. 589, 72 P. 2d 609 (1937). In this case, the evidence that defendant borrowed a water bottle when one was already at his business, purchased dynamite, fuse and caps for a friend "ready for them," caused these items to be left outside a motel room in Roswell where "[t]he party would pick it up," and was at the motel an hour later (after the material was left outside the motel room door) is sufficient to establish that he aided and abetted the arson at his place of business two hours after he was observed at the motel.

This evidence, of course, is circumstantial and to be sufficient must exclude every reasonable hypothesis other than the guilt of defendant. State v. Hardison, 81 N.M. 430, 467 P.2d 1002 (Ct.App.1970). There is evidence in the record to the effect that defendant did not commit arson; that he was not in Roswell when the explosion occurred. The evidence that defendant did not commit the arson does not, however, provide a reasonable hypothesis that he did not aid and abet the crime.

The hypotheses advanced by defendant that he did not aid and abet the arson are: that there was no motive for defendant to do so (there is evidence that his business was profitable); that other people (employees) had keys to the business; that another person had been seen entering the business earlier in the summer at an improper hour. In our opinion, none of these hypotheses are reasonable in the light of the evidence that defendant procured materials of the type used in the arson, the evidence of the time when these materials were procured, and the time of the arson itself.

The circumstantial evidence is sufficient to sustain defendant's conviction as an aider and abetter.

*Sequestration of the jury.*

After the jury had been deliberating for some time (the record does not show the hours involved), the trial court decided to allow the jurors to go home for the night and resume their deliberation the following morning. Defendant moved that the jury be kept together ". . . apart from their families and any publicity media. . . ." The motion was denied. Before allowing the jurors to separate, the trial court admonished the jurors "strongly" that: ". . . [y]ou do not talk to anyone or permit anyone to talk to you. Don't talk to each other in pairs or threes or fours. . . . [P.]articularly do not let your wife or husband talk to you about it. And, do not read the newspaper or listen to the radio or TV reporters. . . . [D]o not read the local newspaper or listen to news reports. . . ."

In his motion, defendant opposed separation of the jury ". . . in light of the repeated appearance on the front page of the daily newspaper of the stories concerning this case." He asserts that it was error to allow the jury to separate because of the "publicity surrounding the trial;" ". . . that it would be virtually impossible for members of the jury if not sequestered, to be kept free from hearing, reading, or overhearing comments concern-

ing the progress of the trial, notwithstanding the Courts [sic] admonitions to the contrary. . . ."

■ Defendant's opposition to allowing separation is that the jurors *might* be exposed to publicity about the case. There is no claim that the jurors were so exposed. Thus, the basis for opposing separation is not established and we cannot say the trial court erred in denying the motion on the grounds asserted by defendant. See State v. Sanchez, 79 N.M. 701, 448 P.2d 807 (Ct.App.1968).

■ A more basic question is whether the jury may be permitted to separate after the cause is submitted to them for decision. During the course of a trial it is, discretionary with the trial court as to whether the jurors may be permitted to separate. Even unauthorized separations during trial is not error unless there is a showing that the defendant is prejudiced, State v. Embrey, 62 N.M. 107, 305 P.2d 723 (1956); United States v. Cook, 15 N.M. 124, 103 P. 305 (1909); Territory v. Chenowith, 3 N. M. (Gild.) 318, 5 P. 532 (1885); or that the jury flagrantly disregarded their duties, United States v. Spencer, 8 N.M. 667, 47 P. 715 (1896).

Two New Mexico decisions indicate that separation of the jury after submission raises a presumption of an improper verdict ". . . when there is nothing in the record showing the harmlessness of the separation, . . ." and that it is the State's burden to overcome this presumption. United States v. Spencer, supra; United States v. Swan, 7 N.M. 306, 34 P. 533 (1893). *Spencer* and *Swan* were, however, distinguished in United States v. Cook, supra.

Concerning separation of jurors after submission, Territory v. Chenowith, supra, states:

". . . the well-settled doctrine in substantially all the states of the union, as well as in England, now is, that even in cases of capital felony, it is in the sound discretion of the court as to whether the jury, during the trial, may

be permitted to separate. It would have been different had the jury been permitted to separate without leave of the court, after the case had been given to them in charge, and before the rendition of their verdict. But, even in such case, before a verdict will be set aside, it must be shown that the prisoner was in some way prejudiced by the separation."

United States v. Cook, supra, approved the foregoing quotation. State v. Romero, 34 N.M. 494, 285 P. 497 (1930) and State v. Blancett, 24 N.M. 433, 174 P. 207 (1918), appeal dismissed, 252 U.S. 574, 40 S.Ct. 395, 64 L.Ed. 723 (1920), held that temporary separation of some jurors after submission was not, in itself, error; an affirmative showing of prejudice was required. State v. Romero, supra, and Territory v. Chenowith, supra, imply that separation of jurors after submission is within the trial court's discretion.

From the foregoing, and finding no statute to the contrary, we hold that it is within the trial court's discretion to permit the separation of jurors after submission of the cause to the jurors. Defendant not having shown any prejudice resulting from the permitted separation in this case, defendant's contention is without merit.

The judgment and sentence is affirmed. It is so ordered.

HENDLEY, J., concurs.

SUTIN, Judge (dissenting).

I respectfully dissent.

The Supreme Court of the United States adopted Rule 52 of the Rules of Criminal Procedure. 18 U.S.C.A., rule 52. Rule 52(b) reads as follows:

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

The purpose of this rule is to avoid a clear miscarriage of justice. Moore v. United States, 399 F.2d 318 (C.A.Ga.1967), cert. den. 393 U.S. 1098, 89 S.Ct. 893, 21 L.Ed.2d 789.

In United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936), Justice Stone said:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.

See 3 Wright, Federal Practice & Procedure, § 856; Orfield, Criminal Procedure under the Federal Rules, § 52.

In New Mexico, the Supreme Court adopted Rule 20(1), [21-2-1(20) (1), N. M.S.A.1953 (Repl. Vol. 4)], which reads as follows:

> None but jurisdictional questions shall be first raised in the Supreme Court.

Notwithstanding this rule, "the supreme court, in the interest of justice, has not limited to jurisdictional questions those that can be first raised in the supreme court." Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231 (1949). This subject includes civil and criminal cases, and approaches "plain and obvious" error under Federal Rule 52(b), supra.

This is the first arson case to reach an appellate court in New Mexico. Justice demands that we determine obvious errors or those which seriously affect the liberty of a man, even though they were not brought to the attention of this court. We recognize that good legal counsel may overlook important questions.

There are four separate grounds for this dissent:

(1) The arson statute is ambiguous and as construed, Atwood could not be found guilty.

(2) Atwood was entitled to a directed verdict at the close of all the evidence.

(3) Atwood was charged in the disjunctive of two separate crimes in one count, and was convicted of both crimes without instructions on the disjunctive allegations.

This is reversible error which requires a new trial.

(4) It was reversible error to permit separation of the jury after submission of the case, and demands a new trial.

1. *The Arson Statute is Ambiguous, and as Construed, Atwood Could not be Found Guilty*

Sections 40A-17-5(A) and (C), N.M.S. A.1953 (Repl. Vol. 6, Supp.), read as follows:

> A. Arson consists of maliciously or willfully starting a fire or causing an explosion with the purpose of destroying or damaging any building, *occupied structure* or property *of another,* or bridge, utility line, fence or sign; *or* with the purpose of destroying or damaging any property, *whether the person's own* or another's, to collect insurance for such loss. [Emphasis added.]
>
> \* \* \* \* \* \*
>
> C. As used in this section, "occupied structure" includes a . . ., structure . . . adapted . . . for carrying on business therein, *whether or not a person is actually present.* [Emphasis added.]

This statute was enacted in 1970 following State v. Dennis, 80 N.M. 262, 454 P.2d 276 (Ct.App.1969), which held the previous arson statute unconstitutional.

No similar arson statute has been suggested by the state or Atwood. The above statute, being novel and in derogation of the common law, needs clarification.

The trial court instructed the jury that Atwood was charged in the alternative with:

1. Committing arson with the purpose of destroying or damaging a building belonging to New Mexico Savings and Loan Company; *or*

2. Committing arson with the purpose of destroying or damaging property to collect insurance for the loss.

Atwood was not charged with committing arson on an "occupied structure . . . of another."

The arson statute states five separate and distinct crimes in one paragraph. They are: destroying or damaging (1) any building of another; (2) any occupied structure of another; (3) any property of another; (4) any property of the person to collect insurance; (5) any property of another to collect insurance.

The building involved in this case was an "occupied structure." It was owned by New Mexico Savings and Loan Company, and was used to carry on the business of Atwood. Atwood was not charged with this criminal offense. He is, therefore, not guilty of the charge of committing arson on the "building" of New Mexico Savings and Loan Company.

The majority opinion does not determine whether Atwood was guilty of arson to collect insurance for the loss of property. Although I do not believe he was, this offense charged will not be discussed.

### 2. Atwood was Entitled to a Directed Verdict at the Close of all the Evidence.

There are so many varied problems involved in arson that each case must be decided on its own facts. This was one of the odd situations which arose because it involved an accused, the owner of a business, who was charged with aiding and abetting an unknown incendiary who directly caused the explosion and fire.

Atwood is presumed to be innocent, and this presumption remains with him until his guilt is established by the evidence beyond a reasonable doubt. State v. Henderson, 81 N.M. 270, 466 P.2d 116 (Ct.App. 1970).

In State v. Slade, 78 N.M. 581, 434 P.2d 700 (Ct.App.1967), a directed verdict was involved. The court set the rules as follows:

It is axiomatic that the burden rests upon the state to prove each and every essential element of the offense charged beyond a reasonable doubt. It is not necessary, however, that the charge be established only by direct evidence. Circumstantial evidence is sufficient if the circumstances point unerringly to the defendant and are incompatible with and exclude every reasonable hypothesis other than that of his guilt.

First, in considering the sufficiency of circumstantial evidence, we must constantly bear in mind the doctrine of reasonable doubt. Finch v. State, 249 Ind. 122, 231 N.E.2d 45 (1967). It is also our duty to scrutinize circumstantial evidence more critically in a criminal case than in a civil case. State v. Van Gorder, 196 Iowa 782, 195 N.W. 204 (1923); Murdock v. State, 351 P.2d 674 (Wyo.1970); Smith v. Commonwealth, 171 Va. 480, 198 S.E. 432 (1938); State v. Buckingham, 50 Del. 469, 134 A.2d 568 (1957).

Second, it is not enough that the testimony raise a strong suspicion of guilt, State v. Easterwood, 68 N.M. 464, 362 P.2d 997 (1961), because it does not supply the place of evidence when life or liberty is at stake; State v. Bunton, 453 S.W.2d 949 (S.Ct.Mo.1970); Frederick v. State, 240 Ind. 598, 167 N.E.2d 879 (1960). A mere probability of guilt is insufficient, Brown v. State, 481 P.2d 475 (Okla.Cr.1971), if the circumstantial evidence is also consistent with a reasonable hypothesis of innocence. Watts v. State, 247 So.2d 16 (Fla. Ct.App.1971). A mere showing of motive and opportunity does not overcome the defendant's presumption of innocence and establish, beyond a reasonable doubt, his participation in the criminal act. State v. Paglino, 291 S.W.2d 850 (S.Ct.Mo.1956). "Where different inferences may be drawn from the same state of circumstances, it is the duty of the court to presume in favor of innocence rather than of intentional and guilty misconduct." People v. Kelly, 11 App.Div. 495, 42 N.Y.S. 756 (1896), app. dismissed 153 N.Y. 651, 47 N.E. 1110 (1896).

Furthermore, a jury is not allowed to conjecture whether Atwood *might* have

done something, State v. Grubaugh, 54 N. M. 272, 221 P.2d 1055 (1950), because if evidence must be buttressed by surmise and conjecture, rather than logical inference in order to support a conviction, this court, charged with the protection of civil liberties, cannot allow such conviction to stand. State v. Romero, 67 N.M. 82, 352 P.2d 781 (1960).

Third, the state has the burden of proving each of the essential elements of arson under § 40A-17-5(A), supra. The corpus delicti has been established. In addition, the state must prove that Atwood engaged an unknown incendiary to destroy or damage the building of New Mexico Savings and Loan Company.

I shall not repeat all the evidence most favorable to the state. It is necessary to reach the hiatus in the testimony to determine whether inference on inference can be drawn to nail Atwood to the offense, and determine whether he aided and abetted an incendiary.

### (a) The Hiatus in the Evidence.

On August 4, 1970, Sparks rode back to Roswell with Atwood and took the "stuff" himself in a brown bag. About 11:00 p. m., Atwood and Sparks arrived in Roswell, and Atwood took Sparks to register at the Downtown Motel. Sparks, at the request of Atwood, left dynamite materials outside the door to his room. Atwood said, "The party would pick it up." There was no evidence that any person actually picked up the items, nor that these items were used to cause the explosion and fire. Sparks and Atwood parted late the night of Tuesday, August 4, 1970. Sparks said he slept at the motel that night and left for Hobbs by bus the next morning about 6:50 A. M. The Downtown Motel manager testified that Sparks' room was not occupied Tuesday night. Sparks did not testify whether the dynamite materials had been picked up.

Just before midnight, Tuesday, August 4, 1970, Atwood was seen driving into the Downtown Motel in Roswell, but there was no evidence he stopped. He was in a Ford Mustang with a woman, or his wife. Sometime between 11:30 p. m. and 1:00 a. m., Atwood, his wife and daughter purchased gasoline at a filling station in Roswell and then left for Las Cruces to visit a sick sister. He stopped in Alamogordo to eat and left Alamogordo around 2:00 a. m., the time of the fire and explosion in Roswell.

Here we have a hiatus in the evidence. There are no facts or evidence of what occurred between 11:00 p. m. and midnight, August 4, 1970, when Atwood drove into the Downtown Motel, and between midnight and 2:00 a. m., the time the explosion and fire occurred. There is no evidence that Atwood stopped at the motel. There is no evidence that the materials were picked up. What was his purpose for driving to the motel? Shall we guess or surmise? Or did Atwood just drive through the motel premises and proceed to the filling station for gasoline? We do not know.

The questions to be answered are: (1) on Tuesday night, August 4, 1970, can a reasonable inference be drawn that Atwood, or someone on his behalf, picked up the dynamite materials outside the door to Sparks' room at the Downtown Motel? (2) Can a further reasonable inference be drawn that the dynamite materials were used to commit arson? Or (3) if Atwood did pick up these items, can another inference be drawn that he delivered them to an incendiary to commit the crime of arson? (4) Can another inference be drawn that Atwood delivered a key to the store to the incendiary? And (5) can a further reasonable inference be drawn that the materials left by Sparks were the materials used in the explosion and fire? There are no facts from which these inferences can be drawn.

In overruling Atwood's motion for a directed verdict, the trial court said: "I think it is pretty weak at this point. But I will let the jury decide it." I believe it was too weak to submit to the jury.

I do not hesitate to say that there is a strong suspicion of guilt or probability of guilt, but this is not sufficient to convict Atwood of arson. He had an opportunity to commit the crime or he might have done so, but this is not substantial evidence. He must be proven guilty of arson by substantial evidence beyond a reasonable doubt.

For definitions of a reasonable inference, see State v. Jones, 39 N.M. 395, 48 P.2d 403 (1935), and Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640 (1940).

The *Stambaugh* court held that the jury must not reach its conclusion from conjectures or *probabilities*. If the jury reaches a conclusion by guesses, conjectures or *the weighing of probabilities*, not by logical deduction from facts proved, the conclusion is erroneous.

Inferences are ofttimes a convenience used by courts of review to affirm or reverse criminal cases based on circumstantial evidence. See State v. Browder, (Ct. App.) 83 N.M. 238, 490 P.2d 680, decided October 29, 1971; State v. Baca, (Ct.App.), 83 N.M. 184, 489 P.2d 1182, decided October 8, 1971; State v. Belcher, 83 N.M. 75, 488 P.2d 125 (Ct.App.1971); State v. Betsellie, 82 N.M. 782, 487 P.2d 484 (1971); State v. Phillips, 83 N.M. 5, 487 P.2d 915 (Ct.App.1971). Many more cases can be cited.

It is our duty to presume in favor of innocence where different inferences can be drawn. From the facts proved, an equally logical deduction can be made that the dynamite materials were not picked up; that neither Atwood nor anyone on his behalf picked up the materials; that the materials picked up were not used to commit arson.

Piling inference on inference is not a sufficient basis for reaching a reasonable, logical conclusion. Dull v. Tellez, 83 N.M. 126, 489 P.2d 406 (Ct.App.1971); Adamson v. Highland Corporation, 80 N.M. 4, 450 P.2d 442 (Ct.App.1969); Renfro v. J. D. Coggins Company, 71 N.M. 310, 378 P.2d 130 (1963).

During the trial, Sparks was asked this question [Tr. 244–45]:

Q. That cap—were those caps similar to the one that is on the end of this cord? Are they about the same type?'

A. Yeah. That's a dynamite cap. Same type.

The testimony is that the cap was of the same type. There are two types, percussion caps and fuse caps. There are four or five brands of fuse caps. The cap described in evidence can be of the same type as that left by Sparks and yet not be the same cap. There is no evidence that it was the same cap. Neither is the cord to which it was attached, the fuse which Sparks left at his motel room. The items left by Sparks and those items actually used to commit arson must be specifically identified. See State v. Phillips, supra.

### (b) *Defense Evidence Which Points Towards Innocence.*

"In applying the circumstantial evidence rule, the State's evidence is accepted as true but the Court may look to defense evidence for the purpose of ascertaining the existence of a reasonable hypothesis other than guilt." State v. Buckingham, supra.

Defense evidence which points toward innocence is as follows:

(1) The record is silent on Atwood's conduct with reference to the dynamite materials left on the outside of Sparks' door at the Downtown Motel the night of Tuesday, August 4, 1970.

(2) The record fails to disclose that the items used to commit arson were the same items left outside of the door of Sparks' room at the Downtown Motel. There is no evidence that anyone picked up the materials.

(3) The lock removed from the back door of Atwood's business after the fire was not the lock left on the back door when it was locked the evening before the fire. There was removal and replacement of the padlock on the back door.

(4) The financial condition of Atwood's business shows that during March and April 1970, Atwood procured a loan for

$23,800 from the Small Business Administration (SBA) which the government used to pay off all of Atwood's creditors. This was four months before the fire and explosion. After payment to creditors, there was $5,000 left over. $3,000 was used to buy Zinks Work Shop. $2,000 was left in SBA. Then, $1,000 was used to remodel the TV shop, and $1,000 was used to purchase new merchandise. During trial, his books and records were made available to the district attorney. In 1969, he testified, he had a gross profit of $29,000; a net profit of $1,421.74. In the first half of 1970, Atwood had gross sales of between $20,000 and $40,000. He was doing more business in 1970 than in 1969. His inventory was around $40,000. He owed creditors about $6,000. He had $6,000 of customers' TV sets in his shop, but his insurance covered these items up to $3,000. When he got out of the penitentiary five years before the fire, he had $25.00. He worked and saved money honestly and built a real nice business.

(5) Atwood had five employees, and two trucks. At the time of the fire, three other people had keys—Marcus Ulabari, Ralph Rodibaugh, and a brother-in-law. Fifty percent of Atwood's business was up for sale, but if the price was right then 100%. He had ulcers and needed a partner.

(6) Atwood had a lot of trouble in the previous six months with Harold Munoz who had worked for him. Munoz threatened to ruin Atwood after Munoz tried to buy into Atwood's business and failed.

(7) On his return from Las Cruces, the morning after the fire, Atwood and his wife went directly to the police station to discuss the fire, but the police told him to leave. The police said if they wanted Atwood, they would see him. The police never spoke with Atwood before the trial.

(8) Atwood built up a good business. At the time of the fire, there is no evidence that Atwood was unable to meet his obligations as they matured. Four months before the fire he procured an SBA loan of $23,800. With $3,000 of this money he bought another business. To protect itself, SBA recommended that Atwood procure insurance in an amount sufficient to cover the loan, with SBA as the mortgagee beneficiary. Two months before the fire, a friend of Atwood's sold him a package of insurance in the amount of $30,000, with SBA as the mortgagee beneficiary. There is no evidence that Atwood's business was overinsured, or that he filed a false claim for insurance. Atwood's claim for insurance, even if granted in full, would pay off the SBA loan and half the claims of customers with TV sets in his store. This evidence points unerringly to the fact that Atwood did not seek fire insurance for illegal purposes, did not seek to pay off the SBA loan in this manner, and leave himself economically destroyed, so that he could not recover the proceeds for his personal use. He preferred to sell all or half of his business. What motive did he have to willfully destroy his own business? Upon what basis would he employ an incendiary to maliciously and willfully burn down the building?

(9) If Atwood provided the incendiary with a key, and the incendiary had two minutes to escape, why did the incendiary place a different lock on the back door? Why were only two feet of fuse provided the incendiary instead of ten or 20 feet? Why were dynamite caps found on Atwood's floor without his knowledge the morning before the fire? These caps provided an alternative source for use in the explosion and fire. Was the dynamite cap found on the end of a cord one of those left on the front door of Sparks' motel room?

(10) There is evidence that the front plate glass window was broken with glass falling on the inside.

(11) Atwood had not removed any merchandise from his store, nor filed any fraudulent claim with the insurance company. He was not present in or about the premises immediately prior to the offense. He did not seek escape or concealment.

This, together with the other facts in the case, does not point unerringly to Atwood and exclude every reasonable hypothesis other than the defendant's guilt.

After a careful review of the evidence, I believe the trial court erred in refusing to direct a verdict for Atwood.

3. *Atwood was Charged in the Disjunctive and was Convicted of both Crimes Without Instructions on the Disjunctive Allegations.*

The trial court instructed the jury that Atwood was charged with arson in the disjunctive with the purpose of (1) damaging or destroying a building belonging to the New Mexico Savings and Loan Company, *or* (2) with the purpose of damaging or destroying property to collect insurance for such loss. Is this permitted by statute? Can Atwood be found guilty of both? This question has not been decided in New Mexico.

Section 41–6–29, N.M.S.A.1953 (Repl. Vol. 6) refers to an indictment or information "for an offense." This statute does not seem to permit the charging of different offenses in the alternative. Disjunctive or alternative allegations of offenses differ from duplicitous allegations. Section 41–6–38, N.M.S.A.1953 (Repl. Vol. 6). "Duplicity in criminal pleading is the joinder of two or more distinct and separate offenses in the same count." State v. Peke, 70 N.M. 108, 371 P.2d 226 (1962); State v. McKinley, 30 N.M. 54, 227 P. 757 (1924). Disjunctive allegations are charges of two or more distinct and separate offenses in the alternative. State v. Williams, 210 N.C. 159, 185 S.E. 661 (1936).

Two offenses alleged alternatively in the same count of the information is reversible error. Since Atwood was charged with committing one felony or another, he cannot ·be convicted of both. State v. Williams, supra; State v. Albarty, 238 N.C. 130, 76 S.E.2d 381 (1953); Melancon v. State. 367 S.W.2d 690 (Tex.Cr.App.1963);

42 C.J.S. Indictments and Information, §§ 101, 139(b), 166.

The trial court instructed the jury that it could find "the defendant guilty as charged in the information." The jury found the defendant guilty as charged in the information. It is reversible error to instruct the jury that the jury may convict of both offenses. State v. Hudson, 93 W.Va. 435, 117 S.E. 122 (1923). This is obvious and plain error and warrants a reversal of the conviction and sentence, and should award Atwood a new trial.·

4. *It was Error to Permit Separation of the Jury After Submission of the Case.*

After submission of the case to the jury for deliberation, Atwood strongly objected to separation of the jury. The trial court allowed the jury to separate for the night. This is reversible error.

Section 21–3–3, N.M.S.A.1953 (Repl. Vol. 4) provides:

In all the courts in this state the common law as recognized in the United States of America, shall be the rule of practice and decision.

This statute was adopted in 1876 and means that a rule of common law remains the rule of practice and decision in New Mexico, except as superseded or abrogated by statute or constitution, or held to be inapplicable to conditions in New Mexico. Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942 (1938). No exception has abrogated the common law doctrine of separation of juries.

In United States v. Swan, 7 N.M. 306, 34 P. 533 (1893), the court said:

The rules of the common law require, especially in trials of felonies, that, *after the cause is submitted, and the jury charged by the court, no separation intervene*; that no intermingling with the public be allowed until a verdict is returned. [Emphasis added.]

*Spencer* and *Swan* are distinguished in United States v. Cook, 15 N.M. 124, 103 P. 305 (1909). The distinction is that in

Cook, separation took place *before* the case was submitted to the jury, and in *Spencer* and *Swan*, the separation took place *after* the cases had been submitted to the jury. I can find no New Mexico citation which overrules *Swan*, supra, on the quoted principle. The dicta cited by the majority in Territory v. Chenowith, 3 N.M. (Gild) 318, 5 P. 532 (1895), precedes *Swan*, and I do not find it necessary to distinguish the other cases cited.

In Abbott Criminal Trial Practice, 4th Ed. Viesselman, § 688, the author states:

> Separation of the jurors may not be permitted between the time of submission of the case and return of their verdict.

The *Swan* case is cited with others as authority. See also 5 Anderson, Wharton's Criminal Law & Procedure, § 2107; 2 Thompson on Trials (Early Ed.), § 2551; 34 A.L.R. 1115 at 1221 where *Swan* is cited; 21 A.L.R.2d 1088 at 1140; 23A C.J.S. Criminal Law, § 1358.

The reasons for the rule are clearly enunciated in United States v. D'Antonio, 342 F.2d 667 (7th Cir. 1965), and United States v. Panczko, 353 F.2d 676 (7th Cir. 1965), cert. den. 383 U.S. 935, 86 S.Ct. 1066, 15 L.Ed.2d 853, as follows:

> At no time is it more essential that the jury should be immunized from outside influences than when it is engaged in deliberating upon what its verdict is to be. During that critical period, when the jurors are engaged in resolving vital issues between the government and the defendant, the judge certainly should not relax the traditional safeguards against outside intrusion. Dispersement into the city at night of a group of men and women who have been deliberating in the security of the courthouse subjects them to the risk of being individually importuned, if not threatened, by telephone calls or personal contacts.

I recognize that there is conflict of authority for various reasons too numerous to mention. Regardless of what is said in other jurisdictions, our duty is to follow *Swan*, supra, until the legislature acts or *Swan* is overruled in the Supreme Court.

Permission, over objection, to allow separation of the jury after submission of the case, is reversible error.

Atwood should be discharged or granted a new trial. The majority feeling otherwise, I respectfully dissent.